**GOSDEN et al., Appellants,**

v.

**LOUIS et al., Appellees.**

[Cite as *Gosden v. Louis* (1996), 116 Ohio App.3d 195.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17609.

Decided Dec. 4, 1996.

*Nicholas Swyrydenko* and *Jeffrey N. James*, for appellants.

*Andrea L. Norris, John E. Matejkovic, William Oldham* and *William P. Michaels*, for appellees.

DICKINSON, Judge.

Plaintiffs Ian Gosden, Paul Gosden, and Gosden Construction Company have appealed from a judgment of the Summit County Common Pleas Court. By their complaint, plaintiffs sought damages allegedly caused them by an August 12, 1993 letter signed by defendants, seventeen residents of Franklin Township. Plaintiffs averred that, by publishing the letter, defendants defamed plaintiffs Ian Gosden and Paul Gosden; tortiously interfered with business relationships of Ian Gosden, Paul Gosden, and Gosden Construction Company; and engaged in a civil conspiracy.

Plaintiffs' claims were tried to a jury beginning November 6, 1995. On November 17, 1995, the trial court entered judgment in favor of defendants on all of plaintiffs' claims.

Plaintiffs have argued that the trial court (1) incorrectly failed to find that the August 12, 1993 letter was libelous *per se* and, therefore, (a) incorrectly failed to instruct the jury that it should presume that plaintiffs had suffered damages caused by the letter and (b) incorrectly failed to instruct the jury that it should presume that defendants had acted with malice in publishing the letter; (2) incorrectly instructed the jury that plaintiffs had to prove "actual malice" in order to recover on their defamation claim; (3) incorrectly instructed the jury that plaintiffs had to prove defendants' negligence in publishing the letter by clear and convincing evidence; (4) incorrectly instructed the jury regarding the type of malice plaintiffs had to prove in order to recover punitive damages on their defamation claim; (5) incorrectly instructed the jury that plaintiffs had to prove their entitlement to punitive damages by clear and convincing evidence; (6) incorrectly received evidence that plaintiff Ian Gosden had previously been convicted of a crime; (7) incorrectly received evidence that plaintiffs Ian Gosden and Gosden Construction Company had previously been involved in a number of lawsuits; (8) incorrectly granted defendants a directed verdict on Paul Gosden's defamation claim; (9) incorrectly granted defendants a directed verdict on plaintiffs' civil conspiracy claim; (10) incorrectly failed to compel defendants to turn over insurance agreements and financial information to plaintiffs; (11) incorrectly failed to enter judgment in favor of plaintiff Gosden Construction Company on its claim of tortious interference with business relationships; (12) incorrectly released the jury and vacated its award of punitive damages to plaintiff Ian Gosden; (13) incorrectly entered a final judgment that was contrary to the jury verdict; and (14) incorrectly assessed costs to plaintiffs.[1]

---

1. Plaintiffs' assignments of error have been divided and rearranged for ease of discussion.

This court affirms the judgment of the trial court in part and reverses it in part. The trial court (1) erred by not finding the August 12, 1993 letter libelous *per se* and, therefore, (a) erred by not instructing the jury that, if plaintiffs proved the other elements of their defamation claim, it should presume that they suffered damages caused by the letter, but (b) did not err by not instructing the jury that it should presume that defendants had acted with malice in publishing the letter; (2) did not err by instructing the jury that plaintiffs had to prove actual malice in order to recover on their defamation claim, because the trial court did not so instruct the jury; (3) did not err by instructing the jury that plaintiffs had to prove defendants' negligence in publishing the letter by clear and convincing evidence; (4) erred by incorrectly instructing the jury that it must find knowledge of falsity or reckless disregard for the truth in order to award plaintiffs punitive damages on their defamation claims; (5) did not err by instructing the jury that plaintiffs had to prove their entitlement to punitive damages by clear and convincing evidence; (6) did not err by receiving evidence that plaintiff Ian Gosden had previously been convicted of a crime; (7) erred by receiving evidence that plaintiffs Ian Gosden and Gosden Construction Company had previously been involved in a number of lawsuits; (8) erred by directing a verdict on Paul Gosden's defamation claim; (9) erred by directing a verdict on plaintiffs' civil conspiracy claim; (10) erred by failing to compel defendants to turn over insurance agreements and financial information to plaintiffs; and (11) did not err by failing to enter judgment in favor of plaintiff Gosden Construction Company on its claim of tortious interference with business relationships. Plaintiffs' arguments that the trial court (12) incorrectly released the jury and vacated its award of punitive damages to plaintiff Ian Gosden against three of the defendants, (13) incorrectly entered a final judgment that was contrary to the jury verdict, and (14) incorrectly assessed costs to plaintiffs are moot and are, therefore, overruled.

## I

Plaintiff Gosden Construction Company is engaged in the construction contracting business. Plaintiff Ian Gosden is the president of Gosden Construction Company. Plaintiff Paul Gosden, Ian Gosden's son, is an employee of Gosden Construction Company.

During the summer of 1993, the owner of a rental property in Franklin Township hired Gosden Construction Company to complete certain repairs to that property. It worked at the property during the months of July and August. During that time, Paul and Ian Gosden were involved in several heated and angry exchanges with three of the defendants: Daryl and Michael Louis, who lived next door to the property, and Michael Cooley, another resident of the neighborhood.

Daryl Louis testified that, on or about August 10 and 11, 1993, with the input of some others whom she did not name, she drafted the letter at issue in this case. Her husband, Michael Louis, testified that he assisted her. The Louises then presented the letter to some of the neighborhood residents and obtained signatures from twenty of them. Shortly thereafter, that letter, dated August 12, 1993, was sent to the property owner. It contained claims that certain "misconduct" was taking place at his property. The alleged misconduct consisted of destruction of neighbors' property, use of profanity, harassment, lewd and lascivious behavior, voyeurism, violation of a county noise ordinance, and speeding and reckless operation of a vehicle. According to the letter, the neighbors were "deeply disturbed" because there were "small children [who had] been terrorized" and were "appalled" that the property owner "would hire such unprofessional people." They requested that he "instruct [his] contractor, Ian Gosden" to stop the alleged misconduct and "instruct Mr. Gosden and his son to stop the illegal behavior." They sent copies of the letter to the Franklin Township Trustees, the Franklin Township Police, and to Ian Gosden. According to plaintiffs, approximately one month after the property owner received the letter, he terminated his relationship with Gosden Construction Company and refused to pay it approximately $25,000 for repairs they claim it had completed.

Plaintiffs filed this action in the Summit County Common Pleas Court on August 9, 1994. Defendants are seventeen of the twenty neighbors who signed the August 12, 1993 letter. Plaintiffs averred that, by publishing the letter, defendants defamed plaintiffs Ian Gosden and Paul Gosden, tortiously interfered with business relationships of Ian Gosden, Paul Gosden, and Gosden Construction Company, and engaged in a civil conspiracy.

During discovery, plaintiffs requested that defendants provide certain information regarding financial status and insurance coverage. On November 14, 1994, due to defendants' failure to comply with plaintiffs' requests, plaintiffs moved to compel production of the financial information. The trial court never ruled on that motion. On June 29, 1995, plaintiffs again moved to compel, this time requesting an order compelling production of both the financial information and the insurance information. The trial court failed to rule on that motion as well. Defendants never provided plaintiffs with the requested information.

Plaintiffs' claims were tried to a jury beginning November 6, 1995. At the close of plaintiffs' case, defendants moved for directed verdicts on all of plaintiffs' claims. The trial court directed a verdict against plaintiffs on their civil conspiracy claim. It also directed a verdict against Paul Gosden on his defamation claim because his name had not appeared in the letter, and because he had failed to show "some injury." Finally, it directed a verdict against Paul Gosden on the tortious interference claim because he was only an employee of his father's

construction company and had no business relationship with which defendants could have interfered.

At the close of defendants' case, the trial court submitted Ian Gosden's defamation claim and the tortious interference claim of Ian Gosden and Gosden Construction Company (considered as one claim by the court) to the jury. The jury found in favor of Ian Gosden on his defamation claim against the Louises and Michael Cooley. It awarded him zero compensatory damages and $3,500 punitive damages against those defendants. It found against Ian Gosden on his defamation claim against the other fourteen defendants and against Ian Gosden and Gosden Construction Company on their tortious interference with business relationships claim.

In view of the jury's failure to award any compensatory damages against the Louises and Michael Cooley, the trial court struck its punitive damage award. It then entered judgment in favor of all defendants on plaintiffs' claims. Plaintiffs timely appealed to this court.

## II

### A

#### 1

Plaintiffs' first assignment of error is that the trial court incorrectly failed to find that the August 12, 1993 letter was libelous *per se* and, therefore, (a) incorrectly failed to instruct the jury that it should presume that plaintiffs had suffered damages caused by the letter and (b) incorrectly failed to instruct the jury that it should presume that defendants had acted with malice in publishing the letter. Defamation is a false publication that injures a person's reputation. *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 117, 567 N.E.2d 253, 257–258. A cause of action for defamation consists of five elements: (1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff. See *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962, citing Restatement of the Law 2d, Torts (1977) 155, Section 558. Written defamation is known as libel; spoken defamation is known as slander. Restatement of the Law 2d, Torts (1977) 177, Section 568.

There are two kinds of defamation and, therefore, two kinds of libel. Defamation *per se* occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo.

*Becker v. Toulmin* (1956), 165 Ohio St. 549, 556, 60 O.O. 502, 505–506, 138 N.E.2d 391, 396–397. Written matter is libelous *per se* if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *Becker v. Toulmin* (1956), 165 Ohio St. 549, 553, 60 O.O. 502, 504, 138 N.E.2d 391, 395; *Westropp v. E.W. Scripps Co.* (1947), 148 Ohio St. 365, 373–374, 35 O.O. 341, 345, 74 N.E.2d 340, 344–345; *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 95 N.E. 735. When a writing is not ambiguous, the question of whether it is libelous *per se* is for the court. *Becker v. Toulmin* (1956), 165 Ohio St. 549, 555, 60 O.O. 502, 505, 138 N.E.2d 391, 396. A writing that accuses a person of committing a crime is libelous *per se. Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Servs., Inc.* (1992) 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962; see, also, *State v. Smily* (1881), 37 Ohio St. 30, 32–33.

■ The August 12, 1993 letter accused plaintiffs of being "unprofessional people." It also contained an allegation of criminal behavior. Voyeurism is a violation of R.C. 2907.08. ·

■ Defendants have argued that, to the extent the letter contained an accusation of criminal behavior, that accusation did not render it libelous *per se* because the alleged crime was not a crime of moral turpitude. Assuming for purposes of argument that voyeurism is not a crime of moral turpitude, that fact would not save the letter from being libelous *per se.* While spoken words accusing a person of committing a crime are slanderous *per se* only if the crime is one of moral turpitude, written words accusing a person of committing any crime are libelous *per se. Akron–Canton Waste Oil v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962, citing *State v. Smily* (1881), 37 Ohio St. 30.

The letter at issue was libelous *per se.* Not only did it contain an accusation of criminal behavior, it also contained the accusation that plaintiffs had acted "unprofessionally." The trial court should have found the August 12, 1993 letter libelous *per se.*[2]

---

2. The dissent has suggested that the letter was not libelous *per se* because it did "not unambiguously accuse the Gosdens of the objectionable behavior." It did, however, unambiguously accuse them of being "unprofessional people," which would "affect[ ] [them] injuriously in [their] trade or profession" and, thus, constitute libel *per se.* See *Becker v. Toulmin* (1956), 165 Ohio St. 549, 553, 60 O.O. 502, 504, 138 N.E.2d 391, 395.

To the extent that there was a question of whether the plaintiffs were the persons being accused of the criminal activity, that question would not affect whether the accusations of criminal activity in the letter were libelous *per se;* it would mean only that plaintiffs would still have the burden of proving that they were the ones accused. See, *e.g.,* Sack & Baron, Libel, Slander, and Related Problems (2 Ed.1994) 136 and 152, Section 2.7.3.4, citing *Peagler v. Phoenix Newspapers, Inc.* (1977), 114 Ariz. 309, 560 P.2d 1216; *Le Dans, Ltd. v. Daley* (1st

a

Plaintiffs have argued that, since the August 12, 1993 letter was libelous *per se,* the trial court should have instructed the jury to presume that plaintiffs had suffered damages caused by the letter. At common law, once a plaintiff proved that material was defamatory *per se,* he was entitled to recover presumed damages. Proof of the defamation itself established the existence of some damages. See *Gertz v. Welch* (1974), 418 U.S. 323, 349, 94 S.Ct. 2997, 3011–3012, 41 L.Ed.2d 789, 810; Prosser, Law of Torts (4 Ed.1971), Section 112 at 754.

In *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the United States Supreme Court considered "the extent to which the constitutional protections for speech and press limit a State's power to award damages in a libel action brought by a public official against critics of his official conduct." *Id.* at 256, 84 S.Ct. at 713, 11 L.Ed.2d at 692. It concluded that the Constitution requires "a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–280, 84 S.Ct. at 726, 11 L.Ed.2d at 706. In *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the United States Supreme Court extended the *New York Times* rule to apply to public figures as well as public officials.

In *Gertz v. Welch* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, the United States Supreme Court considered whether the *New York Times* rule should be further extended to actions against "a newspaper or broadcaster that publishes defamatory falsehoods about an individual who is neither a public official nor a public figure." *Id.* at 332, 94 S.Ct. at 3003, 41 L.Ed.2d at 801. Although the plaintiff in *Gertz* was not a public official or a public figure, he was intimately involved in an important public issue. The Supreme Court held that the *New York Times* rule did not extend to defamation actions by private individuals who happened to have been involved in public issues. It did hold, however, that the Constitution required some protections for defendants in such cases. Among those protections, according to the Supreme Court, was that presumed damages could not be recovered by a plaintiff without showing that the defendant had published defamatory material with "actual malice," knowledge of falsity or reckless disregard for the truth: "[W]e hold that the States may not permit recovery of presumed * * * damages, at least when liability is not based

---

Dept.1960), 10 A.D.2d 502, 200 N.Y.S.2d 618; and *Brayton v. Crowell–Collier Publishing Co.* (C.A.2 1953), 205 F.2d 644, 645; and Section 2.8.1, citing *Mullenmeister v. Snap–On Tools Corp.* (S.D.N.Y.1984), 587 F.Supp. 868. Defendants accused somebody of criminal activity. If the recipients correctly or reasonably understood that somebody to be plaintiffs, it was libelous *per se* as to the plaintiffs.

on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 810.

Although *Gertz* involved a private individual involved in a public issue, its holding was viewed more broadly. For example, the authors of the Restatement of the Law 2d, Torts, concluded, based upon *Gertz*, that presumed damages were not recoverable by a private individual for defamation regarding a private matter, "at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 810, Section 621, comments.

In *Kothe v. Kothe* (June 1, 1983), Lorain App. No. 4274, unreported, 1983 WL 4074, at *4, this court held, based upon *Gertz*, that, in a defamation case between private individuals not involved in a public matter, in the absence of knowledge of falsity or reckless disregard of the truth, proof of actual damages was required before a recovery would be possible:

"[A]ccording to *Gertz*, * * * unless plaintiff can show that defendant made the publication with actual malice, that is, with knowledge of falsity or with reckless disregard for the truth, plaintiff must allege and prove actual damages."

This court recently cited and relied upon its decision in *Kothe*. *Cashion v. Segal* (May 15, 1996), Summit App. No. 17411, unreported, 1996 WL 255980, at *8. It now overrules *Kothe* insofar as it is inconsistent with this opinion.

In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593, the United States Supreme Court specifically addressed whether the Constitution imposes a rule that a private plaintiff in a defamation case must prove knowledge of falsity or reckless disregard for the truth in order to recover presumed damages in cases not involving a matter of public concern. It held that it does not:

"In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest adequately supports awards of presumed * * * damages—even absent a showing of [knowledge of falsity or reckless disregard for the truth]." *Id.* at 761, 105 S.Ct. at 2946, 86 L.Ed.2d at 603–604.

Plaintiffs in this case were private individuals and the August 12, 1993 letter was not about a matter of public concern. Accordingly, inasmuch as the August 12, 1993 letter was libelous *per se*, the trial court should have instructed the jury that, if plaintiffs proved that the letter contained false statements accusing them of crimes or unprofessional conduct and that defendants were negligent in publishing those statements,[3] it should presume that plaintiffs suffered damages caused by the letter.

---

3. See discussion at Section II, A, 1, b, *infra*.

b

Plaintiffs have further argued that, since the August 12, 1993 letter was libelous *per se,* the trial court incorrectly failed to instruct the jury that it should presume that defendants had acted with actual malice in signing it. Malice has often been listed as the "fault" element of a defamation claim. See, *e.g., Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 139, 95 N.E. 735, 740 –741; *Woolf v. Scripps Publishing Co.* (1930), 35 Ohio App. 343, 344, 172 N.E. 389, 389–390. Generally, however, it developed over time that, once other elements of a defamation claim were established, the "fault" element of malice was presumed. In effect, defamation became a strict liability tort: "[T]he pleading of 'malice' tended more and more to become a pure formality, until in 1825 it was held that 'malice' would be implied by the law from an intentional publication of a defamatory character, even though the defendant harbored no ill will toward the plaintiff, and honestly believed what he said to be true." Prosser, Law of Torts (4 Ed.1971) 772, Section 113. It was not "actual malice," however, that was presumed. It was "legal" or "implied" malice, which is the kind of malice that the law infers from or imputes to certain acts, and is distinct from "actual malice" of the sort generally necessary to sustain an award of punitive damages in tort actions. *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229. See, also, R.C. 2315.21. Legal (or implied) malice has been defined as wrongful, intentional action without just cause or excuse. *Pickle* at 442, 11 O.O.2d at 199–200, 166 N.E.2d at 228–229.

■ The former implied or presumed "fault" element of malice, however, has now been replaced in Ohio by a "fault" element that must be expressly proven. Among the protections that the United States Supreme Court found in the Constitution, *Gertz v. Welch* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, was that defendants sued for defamation by private individuals involved in public issues could not have liability imposed upon them without "fault." The degree of "fault" required was to be determined by the states: "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Id.* at 347, 94 S.Ct. at 3010, 41 L.Ed.2d at 809. The authors of the Restatement of the Law 2d, Torts, concluded that the holding of *Gertz,* that states could not impose liability on "a publisher or broadcaster of defamatory falsehood injurious to a private individual" in the absence of some degree of "fault," was applicable to alleged defamation of a private individual "in relation to a purely private matter." Restatement of the Law 2d, Torts (1977) 221, Section 580B. See, also, *id.,* Section 580B, Comments *b* and *c.*

Although, as discussed in Section II, A, 1, a of this opinion, the United States Supreme Court, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593, clarified its holding in *Gertz v. Welch* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, by ruling that the Constitution does not require a private plaintiff to prove knowledge of falsity or reckless disregard for the truth in order to recover presumed damages for a purely private defamation. The court did not address whether such a plaintiff can succeed on a private defamation claim without proving some degree of "fault." The Ohio Supreme Court, however, has held that such a plaintiff must prove at least negligence. "The plaintiff in a defamation case now has the burden of proving both that the statement was false and the defendant was at least negligent in publishing it." *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253, 255. See, also, *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 178–180, 512 N.E.2d 979, 982–984. Presumed malice, therefore, would now be either meaningless, since "fault" must be expressly proven anyway, or contrary to Ohio law, if meant to satisfy the "fault" element of a defamation claim.

■ In this case, the trial court correctly instructed the jury that, in order to find in favor of plaintiff Ian Gosden on his defamation claim, it would have to conclude that "a false publication was made by the defendants, and the defendants were negligent in making the false publication." Plaintiffs' argument that they should not have been required to prove negligence because the letter was libelous *per se*, therefore, is incorrect. They were not relieved of the burden of proving that defendants were at least negligent in publishing it. An instruction that malice is presumed when a publication is libelous *per se* would have been incorrect, and the trial court did not err by refusing to give such an instruction.

2

■ Inasmuch as the August 12, 1993 letter was libelous *per se*, the trial court should have instructed the jury that plaintiff Ian Gosden was entitled to recover presumed damages if he proved that statements in the letter were about him, that the statements were false, that defendants published the letter, and that they were negligent in doing so. See *Moore v. P.W. Publishing Co.* (1965), 3 Ohio St.2d 183, 188, 32 O.O.2d 179, 181–182, 209 N.E.2d 412, 415. The trial court incorrectly failed to determine that the August 12, 1993 letter was libelous *per se* and incorrectly failed to instruct the jury on presumed damages. The trial court did not err by failing to instruct the jury that it should presume defendants had acted with malice in publishing the letter. Plaintiffs' first assignment of error, therefore, is sustained in part and overruled in part.

B

Plaintiffs' second assignment of error is that the trial court incorrectly instructed the jury that plaintiffs had to prove actual malice in order to recover on their defamation claim. As discussed in regard to plaintiffs' first assignment of error, the trial court instructed the jury that, in order for Ian Gosden to recover on his defamation claim, he had to prove that "a false publication was made by the defendants and that the defendants were negligent in making the false publication." This was a correct instruction. Plaintiffs have argued, however, that the trial court later incorrectly instructed the jury that it could not find for Ian Gosden on his defamation claim unless it found that defendants had acted with "actual malice" in making the false publication.

At a point in its instructions after it had reviewed the elements of Ian Gosden's defamation claim, the trial court defined the term "actual malice":

"You may find that publication of a defamatory statement is made with actual malice if you find by clear and convincing evidence that the defendants published the statement either with actual knowledge that the statement was false or with a reckless disregard of its probable falsity."

The trial court then proceeded to instruct on compensatory and punitive damages. As part of its instruction on punitive damages, it informed the jury that "[b]ecause the plaintiff asked for punitive damages, he is entitled to punitive damages upon his complaint for defamation only if he proves the publication was made with actual malice."

Apparently, the trial court defined the term "actual malice" as knowledge of falsity or reckless disregard as to falsity because it incorrectly believed that that was the type of malice necessary for an award of punitive damages. As such, it would have been better if it had provided the definition immediately following its instruction on punitive damages rather than between its instruction on the elements of defamation and its instruction on compensatory damages. The placement of the definition, however, was not so confusing as to require reversal. "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantive rights.'" *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674–675, quoting *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171. Viewing the instructions as a whole, this court cannot conclude that the placement of the definition of "actual malice" "probably misled the jury" to plaintiffs' material prejudice. Plaintiffs' second assignment of error is overruled.

## C

 Plaintiffs' third assignment of error is that the trial court incorrectly instructed the jury that plaintiffs had to prove defendants' negligence in publishing the letter by clear and convincing evidence. Plaintiffs have argued that the burden of proof on the elements of defamation—including fault—is a preponderance of the evidence. That argument, however, is incorrect. In order to recover on a defamation claim, a plaintiff must prove by clear and convincing evidence that the defendant was at least negligent in publishing defamatory material. *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253, 255–256, citing *Lansdowne v. Beacon Journal Pub. Co.* (1987), 32 Ohio St.3d 176, 178–180, 512 N.E.2d 979, 982–984. Plaintiffs' third assignment of error is overruled.

## D

 Plaintiffs' fourth assignment of error is that the trial court incorrectly instructed the jury regarding the type of malice it was required to find before awarding Ian Gosden punitive damages on his defamation claim. As mentioned above, as part of its instructions, the trial court defined the term "actual malice" for the jury. The definition provided by the trial court was a definition of the type of malice necessary for a public official or public figure to recover on a claim of defamation. That same type of actual malice would have to be proven by a private individual involved in a matter of public concern to recover punitive damages. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. at 756–757, 105 S.Ct. at 2943–2944, 86 L.Ed.2d at 601. It is not necessary, however, for a private individual not involved in a matter of public concern to prove that type of actual malice to recover punitive damages. The type of malice necessary for an award of punitive damages in a case like this one is ill-will, vengefulness, hatred, or reckless disregard of plaintiffs' rights.[4] *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 445–446, 659 N.E.2d 1242, 1246–1248, citing R.C. 2315.21(B) and *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

The trial court instructed the jury that it could award punitive damages to plaintiffs only if it found the *New York Times* type of "actual malice," that is,

---

4. This malice is known as "express malice" but, unfortunately, is sometimes called "actual" malice, thereby causing possible confusion with the type of "actual malice" defined as knowledge of falsity or reckless disregard as to truth or falsity, that a public official or public figure must prove in a defamation action. See *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 115, 573 N.E.2d 609, 613–614; *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 14–15, 110 S.Ct. 2695, 2703–2704, 111 L.Ed.2d 1, 14–15, citing *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094.

knowledge of falsity or reckless disregard for the truth. In a purely private defamation case, however, common-law "express" malice (ill-will, hatred, etc.) remains the standard. *Malone v. Courtyard by Marriott L.P., supra.* Plaintiffs' fourth assignment of error is sustained.

## E

Plaintiffs' fifth assignment of error is that the trial court incorrectly instructed the jury that plaintiffs had to prove their entitlement to punitive damages by clear and convincing evidence. Plaintiffs have argued that the proper burden of proof for awarding punitive damages in a private defamation case is a preponderance of the evidence.

R.C. 2315.21(C)(3) provides:

"In a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that he is entitled to recover punitive or exemplary damages."

Plaintiffs' fifth assignment of error is overruled.

## F

Plaintiffs' sixth assignment of error is that the trial court incorrectly received evidence that plaintiff Ian Gosden had previously been convicted of a crime. During 1989, Ian Gosden pleaded guilty to a charge of receiving stolen property. On July 11, 1995, the records pertaining to his conviction were sealed. Prior to trial in this case, plaintiffs moved *in limine* for an order that no reference to the conviction should be made in front of the jury. The trial court denied their motion. During direct examination of Ian Gosden, plaintiffs' attorney questioned him about his conviction. Defendants asked him additional questions about it on cross-examination.

Plaintiffs have argued that evidence regarding Ian Gosden's conviction was not admissible because the record of that conviction had been sealed prior to trial. If it was error for the trial court to receive evidence regarding Gosden's conviction, however, plaintiffs invited that error by first offering that evidence. A party cannot complain about an error th· ˙ he invited or induced at trial. *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254, 648 N.E.2d 1355, 1358–1359.

Plaintiffs have argued that they should be relieved from the invited error doctrine by the trial court's unequivocal statement in response to their motion *in limine* that it would receive evidence of Gosden's conviction. A ruling on a motion *in limine* is tentative, regardless of how unequivocally it is stated. Such

a ruling is not reviewable on appeal. *State v. Brown* (1988), 38 Ohio St.3d 305, 311–312, 528 N.E.2d 523, 533–534.

Once plaintiffs' motion *in limine* was denied, they were presented with a strategic decision. They could wait until defendants attempted to introduce evidence of Gosden's conviction, object to it, and, if the trial court overruled their objection, preserve their argument for appeal. Alternatively, they could introduce the conviction themselves in an effort to minimize its effect. Having chosen to introduce it themselves, they cannot complain to this court because the trial court received it. Plaintiffs' sixth assignment of error is overruled.

## G

Plaintiffs' seventh assignment of error is that the trial court incorrectly received evidence that plaintiffs Ian Gosden and Gosden Construction Company had previously been involved in a number of lawsuits. During cross-examination of plaintiff Ian Gosden, defendants questioned him about twenty-three separate legal proceedings in which he or his construction company had been involved. Plaintiffs have argued that evidence of those proceedings was unfairly prejudicial within the meaning of Evid.R. 403. They have further argued that that evidence was other-acts evidence used by defendants solely to attack Gosden's character in violation of Evid.R. 404(B).

Defendants in a libel or slander action may prove mitigating circumstances to reduce damages. R.C. 2739.02. Defendants in this case have argued that evidence of reputation must be allowed because damages in a libel action are for injury to reputation, and someone with a bad reputation would have been injured less by a particular defamatory statement than someone with a better reputation. These other lawsuits, defendants have argued, constituted evidence of reputation in the community and were admissible to reduce damages.

In *Guccione v. Hustler Magazine Inc.* (Oct.1981), Franklin App. No. 80AP–375, unreported, 1981 WL 3516, at *8, the Tenth District Court of Appeals considered the significance of a plaintiff's reputation in a defamation action:

"Since damages for libel may be predicated upon injury to reputation, it is appropriate for the defendants to demonstrate that, although the publication is libelous, it has caused little injury to the reputation of the plaintiff. A knowingly false, malicious and libelous statement that one has committed an armed robbery would cause little damage to the reputation of a felon who has been convicted of several armed robberies in the recent past. Therefore, it would be appropriate to show that, although the particular statement was false and malicious, it was consistent with the reputation of the libeled person. Ordinarily, evidence of specific acts of misconduct is not admissible as having a bearing upon reputation."

As plaintiffs have pointed out, the court in *Guccione* did not hold that all evidence of other acts is properly admitted so long as it is somehow damaging to a plaintiff's reputation. Rather, it impliedly held that evidence that pertains to the same aspects of the plaintiff's reputation as are alleged to have been damaged by the defamatory matter is admissible to mitigate damages to reputation. This is consistent with an 1877 Ohio Supreme Court holding that only the aspects of a person's reputation allegedly defamed are in issue in a defamation case for purposes of mitigation of damages. *Duval v. Davey* (1877), 32 Ohio St. 604, 610–613.

In this case, the relevant reputation issues were whether plaintiffs were known in the community to commit "illegal" and "unprofessional" acts similar to the ones alleged in the letter, or whether their workmanship was in question in the community. Evidence on those issues would have helped determine a proper damage award by tending to prove whether the allegations were consistent with plaintiffs' reputations, or whether plaintiffs' business was in a position to suffer harm as a result of the letter. According to the evidence presented, however, the various lawsuits and liens that were introduced by defendants involved (1) Ian Gosden's occasional inability to pay bills, usually to subcontractors and suppliers, and usually because he had not been timely paid for contract work himself; (2) disputes Ian Gosden had had with others regarding amounts he owed them; (3) Ian Gosden being named only as a formality as a party in a declaratory judgment action; and (4) in one case, Ian Gosden being sued by a customer for alleged failure to do repair work. For the most part, these cases involved cash flow problems and debt disputes. These problems were not in issue in this case and they had no bearing on whether plaintiffs suffered damage regarding the aspects of their reputations that they claimed had been defamed by defendants. Evidence of these lawsuits, therefore, was not proper for purposes of mitigating damage to reputation.

Plaintiffs have argued that defendants' purpose in questioning Ian Gosden about these lawsuits was to attack his character by showing that he was a "litigious and contentious individual," thereby suggesting that his action against defendants was frivolous. Defendants have argued, apparently in response to this, that character was in issue in this case, and, therefore, appear to have taken the position that this evidence was properly admitted even if it was aimed at attacking character.

Defamation is injury to reputation. Damages can hardly be mitigated by a showing of particular character traits alone, since what matters is what was

known by others in the community.[5] For instance, the robber example from *Guccione* did not place importance on the fact that the person defamed had recently committed the "other acts" of armed robberies; rather, it was the convictions for the robberies that mattered, because they suggested public knowledge. Public knowledge goes to reputation, not character. The evidence of other robberies ("other acts") in the example is merely incidental to proving reputation. Evidence in the trial court of plaintiffs' other lawsuits, therefore, was not properly admissible on character issues.

If, therefore, by evidence of the other legal actions, defendants were attempting to attack Ian Gosden's character, it was improper to do so for the foregoing reasons. If, on the other hand, defendants were attempting to show his reputation, this would have been permissible only had they shown that the lawsuits affected the aspects of his reputation that were defamed. Neither the record nor defendants' arguments on appeal, however, show that there was any relationship between the other lawsuits and the reputation issues involved in this case. Because evidence of no less than twenty-three unrelated lawsuits and liens was introduced by defendants, and because the jury awarded no compensatory damages whatsoever on Ian Gosden's defamation claim, this court concludes that the trial court, by receiving that evidence, committed prejudicial error. Plaintiffs' seventh assignment of error is sustained.

## H

Plaintiffs' eighth assignment of error is that the trial court incorrectly granted defendants a directed verdict on Paul Gosden's defamation claim. In doing so, the trial court ruled that Paul Gosden had not shown "injury," and was "not named in any defamatory or alleged defamatory material." As discussed in regard to plaintiffs' first assignment of error, defendants' letter was defamatory *per se* and, therefore, damages were to be presumed as a matter of law. The trial court, therefore, erred in directing a verdict against Paul Gosden based upon the absence of proof that he suffered damages.

---

5. It is true that, in a few older defamation cases, courts held evidence of "character" permissible to mitigate damages, or that "character" was in issue. See, *e.g.*, *Steen v. Friend* (1900), 11 Ohio C.D. 235, 239–240; *Duval v. Davey* (1877), 32 Ohio St. 604, 610–613; *Fisher v. Patterson* (1846), 14 Ohio 418, 425; and *Dewit v. Greenfield* (1831), 5 Ohio 225, 226–227. The word "character" was used in those cases, however, as a synonym of "reputation," which is not the way "character" is now used in the Ohio Rules of Evidence. "Character" in our evidence rules refers to tendencies or characteristics of a person, whether known or not; reputation has to do only with what is known or believed by others about a person. See, *e.g.*, Evid.R. 404 and 405 and accompanying Commentary.

The trial court's other reason, that Paul Gosden was not named in the letter, was also an incorrect basis for directing a verdict against him. A plaintiff need not have been specifically named in a libelous statement to have been defamed. See *Shimola v. Cleveland* (1989), 65 Ohio App.3d 457, 462, 584 N.E.2d 774, 778. The focus of whether a particular person has been defamed is upon whether recipients of the communication understood it to refer to that person. If a recipient understood that the plaintiff was the person to whom the defendant intended to refer, and the plaintiff was in fact the person to whom the defendant intended to refer, the plaintiff has been defamed "even though he is so inaccurately described that it is extraordinary that the communication is correctly understood."[6] Restatement of the Law 2d, Torts (1977) 165, Section 564, Comment *a.* See, also, *Akron–Canton,* 81 Ohio App.3d at 604, 611 N.E.2d at 964 (holding that "[c]harges against [a] business could logically be construed" as charges against the person who was the "dominant figure controlling" the business).

Defendants referred in their letter to Ian Gosden by name, and to "his son." Plaintiff Paul Gosden is Ian Gosden's only son; he worked at the property where the alleged behavior took place, and he was known to defendants as Ian Gosden's son. The jury could have concluded that he was the person to whom defendants actually intended to refer. As to the understanding by the recipients, the jury could have concluded that, at the least, the property owner who had hired Gosden Construction and had interacted with both Ian and "his son" would have known defendants intended to refer to Paul Gosden. The police and trustees, if they were not familiar with Paul or did not know he was Ian's son, could have easily ascertained his identity based on the reference in the letter, since Paul was the only person who could possibly fit the description of "[Ian's] son." See *Frost v. Nemeth* (Oct. 22, 1987), Mahoning App. No. 86 C.A. 179, unreported, 1987 WL 18847, at *2; and *Gravill v. Gravill* (Aug. 25, 1983), Cuyahoga App. No. 45542, unreported, 1983 WL 4631, at *4. There was sufficient evidence for Paul Gosden's defamation claim to go to the jury. Plaintiffs' eighth assignment of error is sustained.

I

Plaintiffs' ninth assignment of error is that the trial court incorrectly granted defendants a directed verdict on plaintiffs' civil conspiracy claim. Plaintiffs have argued that they presented sufficient evidence on all elements of civil conspiracy

---

6. Alternatively, if a recipient reasonably understood that the plaintiff was the person to whom the defendant intended to refer, the plaintiff was defamed, even if the defendant did not actually intend to refer to the plaintiff. Restatement of the Law 2d, Torts (1977) 165, Section 564, and Comment *b.*

to allow it to go to the jury. Defendants have argued that there was no evidence of any meeting or agreement among the defendants, or any evidence of malice, and, therefore, that all the elements were not sufficiently proven by plaintiffs. Defendants have also argued that, since plaintiffs' defamation claim failed completely at trial, their civil conspiracy claim would also have failed because recovery for civil conspiracy cannot be had in the absence of an underlying tort.

 Civil conspiracy in Ohio is "a malicious combination of two of more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866, citing *LeFort v. Century 21– Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645, citing *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 196, 26 O.O.2d 359, 360, 193 N.E.2d 280, 281–282. Although the opinions in neither of these Ohio Supreme Court cases contained further elaboration on this definition, in the *Minarik* case, which both parties have cited, and which is almost always cited in appellate civil conspiracy cases, the Supreme Court quoted with apparent approval the rule that an underlying unlawful act is required before a civil conspiracy claim can be successful. *Minarik, supra,* at 195, 26 O.O.2d at 359–360, 193 N.E.2d at 280–281, citing 1 Cooley on Torts (4 Ed.) 234, Section 734. See also *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 301, 549 N.E.2d 1202, 1207–1208, and *Hill v. MTD Products, Inc.* (Apr. 10, 1996), Medina App. Nos. 2477–M and 2483–M, unreported, 1996 WL 170360, at *5.

 The element of "malicious combination to injure" does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act. See *Pumphrey v. Quillen* (1955), 102 Ohio App. 173, 177–178, 2 O.O.2d 152, 154–155, 141 N.E.2d 675, 679–680, citing Prosser on Torts (Hornbook Series), Section 109, at 1094, and cases cited. See, also, Restatement of the Law 2d, Torts (1979) 316, Section 876, Comments *a* and *b.* In *Pumphrey,* the court went on to state that not even a meeting is necessary and that "it is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design." *Id.* at 178, 2 O.O.2d at 155, 141 N.E.2d at 680, citing *Houston v. Avery* (1935), 19 Ohio Law Abs. 142, 147. The "malice" in "malicious combination" is legal or implied malice, "which the law infers from or imputes to certain acts," and is defined as "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." See *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229 (defining "malice" for purposes of "malicious prosecution"). This "malice," then, would be inferred from or imputed to a common design by two or

more persons to cause harm to another by means of an underlying tort, and need not be proven separately or expressly.

"In a way not competent for one alone" means that if one person could lawfully commit an act, then that act committed by two or more persons cannot support a conspiracy claim, no matter how malicious the "conspirators," or how great the resulting "injury." See *Palmer v. Westmeyer, supra,* at 301, 549 N.E.2d at 1207–1208. This element essentially states the rule that there must be an underlying unlawful act which is actionable in the absence of a conspiracy. It further points out that, in the civil conspiracy context, an otherwise lawful act is not made unlawful merely because two or more persons have joined together to commit it in hopes of causing injury to the plaintiff, even if they succeed. *Id.*[7]

The element of "resulting in actual damages" means that, if a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action. See *Minarik, supra,* at 195–196, 26 O.O.2d at 359–360, 193 N.E.2d at 280–282. Some Ohio cases have held that a plaintiff must allege and prove damages attributable to the conspiracy that are above and beyond those resulting from any underlying or supporting torts. See *Crosby v. Beam* (1992), 83 Ohio App.3d 501, 515–516, 615 N.E.2d 294, 303–305, and *Stiles v. Chrysler Motors Corp.* (1993), 89 Ohio App.3d 256, 266, 624 N.E.2d 238, 244, both citing *Minarik, supra,* at 195–196, 26 O.O.2d at 359–360, 193 N.E.2d at 280–282. These holdings, however, were based on a misreading of *Minarik.* It is stated in *Minarik* that any damages must be "directly attributable" to the conspiracy. *Minarik, supra,* at 196, 26 O.O.2d at 360, 193 N.E.2d at 281–282. In the context of that case, however, that statement did not mean the damages had to be attributable only to the conspiracy to the exclusion of the underlying tort. It meant that damages, in order to be recoverable under a civil conspiracy claim, cannot be the result of just any tort committed by a conspirator, or just any act committed in furtherance of the conspiracy. They must have been caused by a tort committed in furtherance of the conspiracy. Essentially, this simply restricts the measure of recovery for a conspiracy claim to those damages caused by the underlying tort (or torts) necessary to support the claim for civil conspiracy in the first place.

---

7. There are, of course, some situations when insignificant acts by individuals, not tortious if committed independently, may together cause actionable harm to a person, such as slight pollution by each of a number of people that in combination amounts to harmful levels, or minimal noise by many that in combination amounts to nuisance. Prosser on Torts (4 Ed.1971) 322–323, Section 52. In those situations, however, the individuals are not committing "an act" together, but rather many small, similar acts in concert, and so the *Palmer v. Westmeyer* rule does not apply.

This is borne out by another passage in *Minarik*. The court quoted a passage from Cooley on Torts that the significance of the conspiracy claim is not damages caused by the conspiracy alone, but rather additional pockets from which to collect damages, and a possible increase in those damages:

"The general rule is, that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The damage is the gist of the action, not the conspiracy; and though the conspiracy may be said to be of itself a thing amiss, it must nevertheless, until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief.

"When the mischief is accomplished, the conspiracy becomes important, as it affects that means and measure of redress; for the party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it. The significance of the conspiracy consists, therefore, in this: That it gives the person injured a remedy against parties not otherwise connected with the wrong. It is also significant as constituting matter of aggravation, and as such tending to increase the plaintiff's recovery." *Minarik*, 8 Ohio App.2d at 195, 26 O.O.2d at 360, 193 N.E.2d at 281.

The "gist" of a conspiracy action is not the conspiracy itself, and the conspiracy becomes important only after the wrong is committed. A civil conspiracy claim, therefore, serves only to enlarge the pool of potential defendants from whom a plaintiff may recover damages and, possibly, an increase in the amount of those damages; it does not increase the plaintiff's burden by requiring proof of additional damages.

In this case, plaintiffs have argued that it was error for the trial court to direct a verdict against them on their civil conspiracy claim. At the time the trial court directed the verdict, the jury had not yet decided the defamation claim; therefore, the reason could not have been that there was no underlying tort. Instead, the trial court stated that there was not enough evidence to go to the jury on civil conspiracy. Plaintiffs, however, at that point, had alleged and presented sufficient evidence of a "malicious combination to injure." First, almost all of the defendants testified that they intentionally signed the libelous letter. Second, legal malice would be implied by satisfaction of other elements and did not need to be separately proven. Third, the jury would decide whether the defendants' participation in the signing of the letter was unlawful when it decided the defamation claim. There was enough evidence, therefore, for the jury to decide whether there was a common design or agreement to commit the unlawful act of defamation to the injury of the plaintiffs. See *Pumphrey* and *Pickle, supra*.

Since the question of defamation went to the jury, the underlying tort element was sufficiently proved to preclude a directed verdict on the civil conspiracy claim. Defamation is unlawful even if committed by one alone, so the element of "not competent for one alone"—otherwise known as the underlying tort element—was sufficiently proved to go to the jury. Finally, since damages from the defamatory letter should have been presumed as a matter of law, there was sufficient evidence of "actual injury" to go to the jury. Plaintiffs' ninth assignment of error is sustained.

### J

Plaintiffs' tenth assignment of error is that the trial court incorrectly failed to compel defendant to turn over insurance agreements and financial information to plaintiffs. Plaintiffs requested the information from defendants during discovery, and filed two motions to compel after defendants refused to provide it. The trial court failed to rule on the motions. As this court has previously held, "[w]hen a trial court fails to rule upon a motion, it will be presumed that it was overruled." *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348, 1352. The trial court's failure to rule, therefore, constituted a denial of the motions.

Plaintiffs have argued, and defendants have conceded, that Civ.R. 26(B)(2) allows discovery of insurance agreements when the insurance carriers may be liable to pay any judgment against their insured. Defendants have argued, however, that they had no insurance coverage for plaintiffs' claims. Civ.R. 26(B)(2) allows discovery of insurance agreements in order to facilitate realistic evaluation and even settlement of the case. See Civ.R. 26, Staff Note 3(b). This information, therefore, can be important to a plaintiff's case prior to trial, and can even help avoid a trial. Defendants' assertion that they had no potential coverage is without merit because it was based on the statements made by their insurance carriers that they were not required to provide coverage and was not based on any court determinations of lack of coverage. Insurance carriers cannot predict with certainty that their policies will be interpreted by a court in the same way the carriers interpret them. The trial court erred in failing to compel defendants to provide plaintiffs information regarding their insurance agreements.

Regarding financial information about defendants, plaintiffs have argued that such information was admissible at trial for the purpose of determining both compensatory and punitive damage awards. Plaintiffs have argued that, by not being able to obtain information about the defendants' financial status during discovery, they were deprived of the ability to present it to the jury. In response, defendants have argued that the trial court's failure to compel defen-

dants' production of such evidence, which would have helped the jury determine the influence of the defendants in the community, was harmless error at best because the jury members saw the neighborhood and houses of defendants and heard testimony concerning defendants' occupations and lengths of residence in the neighborhood during plaintiffs' cross-examination of them. The plaintiffs, defendants have argued, were thereby able to present sufficient evidence of defendants' probable influence in their community, and any information plaintiffs might have discovered before trial would not have resulted in a different damage award.

■ Information about defendants' financial status is admissible in defamation cases to help the jury determine proper awards of compensatory and punitive damages. Without this information, a jury is less able to determine the likely influence a defendant may have had in the community. More importantly, a jury cannot determine what would constitute an effective punitive damage award unless they have an understanding of the defendant's financial status. A punitive damage award of $1,000, for example, would hardly be effective punishment of a defendant with several hundred thousand dollars at her disposal. See *Waterman v. Martin* (Apr. 16, 1981), Franklin App. No. 80AP–627, unreported, 1981 WL 3134, at *8–9, citing *Manning v. Len Immke Buick* (1971), 28 Ohio App.2d 203, 57 O.O.2d 308, 276 N.E.2d 253, and *Mauk v. Brundage* (1903), 68 Ohio St. 89, 67 N.E. 152.

By arguing that viewing the neighborhood and hearing testimony about defendants' occupations was enough financial information for the jury, defendants have essentially argued that providing plaintiffs with less financial information than is properly admissible and discoverable was as good as providing plaintiffs with all of it. This court disagrees. Housing and occupation information gives no indication of whether a defendant may have sizeable property apart from his house in Franklin Township, such as bank accounts, securities, or other real property holdings. This would be important information for a jury in a defamation case, especially when punitive damages are sought. The lack of such information could have a substantial effect on a damage award, to a plaintiff's prejudice. It was error, therefore, for the trial court to fail to compel defendants to provide the financial information that plaintiffs had requested.

Plaintiffs requested, and were entitled to, information regarding defendants' insurance agreements and financial statuses. Plaintiffs' tenth assignment of error is sustained.

## K

■ Plaintiffs' eleventh assignment of error is that the trial court incorrectly failed to enter judgment in favor of plaintiff Gosden Construction Company on its

claim of tortious interference with business relationships. They have argued that the jury's verdict in favor of defendants on the tortious interference with business relationships claim was against the manifest weight of the evidence:

"In dealing with a claim that a jury verdict is contrary to the weight of the evidence, a reviewing court can reverse only if the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result completely at odds with substantial justice." *Cooper v. Metal Sales Mfg. Corp.* (1995), 104 Ohio App.3d 34, 46, 660 N.E.2d 1245, 1253.

Tortious interference with business relationships occurs when a person, without privilege, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or perform a contract with another. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294. See, also, *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219–220, 379 N.E.2d 235, 238–239. One type of tortious interference with business relationship is the intentional interference with a third person's performance of an existing contract with another. Restatement of the Law 2d, Torts (1979) 9, Section 766, Comment *c*. This is the type alleged by plaintiffs. See Restatement of the Law 2d, Torts (1979) 7, Section 766. The Ohio Supreme Court, relying on Section 766 of the Restatement of the Law 2d, Torts, recognized this particular tort in *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 418–419, 650 N.E.2d 863, 865–867. The elements are (1) existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Id.* at 419, 650 N.E.2d at 866–867.

Plaintiffs have essentially argued that there was a contractual relationship between Gosden Construction Company and the property owner, that all of the defendants knew of this relationship, that the letter caused the owner to terminate Gosden Construction Company's employment and fail to pay for work already completed, and that Gosden Construction Company was thereby damaged. The intent element of tortious interference with a contract, however, requires a showing that the one who interfered intentionally procured the contract's breach. *Id.* See, also, Restatement of the Law 2d, Torts (1979) 11, Section 766, Comment *h* ("The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.").

Plaintiffs questioned each of the seventeen defendants about their involvement with the letter, asking if they recognized it, had signed it, had understood it, and

had known its purpose. Many of them testified that the purpose, as they understood it, was to send it to the property owner, the police, and the township trustees, and to make the alleged offensive behavior stop. Not one defendant testified that there was any intent to interfere in the business relationship between the property owner and the plaintiffs. In fact, plaintiffs never once asked any defendant if he or she intended to cause the property owner to terminate plaintiffs' employment, cause him to fail to pay for completed work, or otherwise interfere in that business relationship beyond requesting that he ask plaintiffs to stop certain alleged behavior. The most that defendants said about their intent was that they wanted the alleged offending behavior to stop, and one defendant testified that he wanted the plaintiffs to be more peaceful during the remainder of their contract work on the property.

No direct evidence was offered by plaintiffs to suggest that the defendants had any intent to interfere with Gosden Construction Company's contractual relationship with the property owner. Plaintiffs have instead argued that such intent must be inferred from the letter and from defendants' knowledge of the relationship. Although the letter contained an assertion that defendants found it "appalling" that the property owner would hire such "unprofessional people" as plaintiffs, there was no request that the property owner stop dealing with Gosden Construction Company, or any suggestion that he should terminate or fail to honor his contractual relationship with it. There was only a request that he ask plaintiffs to stop certain behavior, and some description of the alleged behavior by defendants. No intent to interfere with a contract or business relationship can be found in the bare text of the letter.

Plaintiffs also failed to establish that defendants' letter was the proximate cause of the property owner's alleged breach of his contract with Gosden Construction, which was necessary to establish that defendants "procured" the breach. See *Paramount Supply Co. v. Sherlin Corp.* (1984), 16 Ohio App.3d 176, 181, 16 O.B.R. 186, 191–192, 475 N.E.2d 197, 203–204. Paul Gosden testified that the owner, after receiving defendants' letter, spoke to Paul and warned him that he would probably be receiving a copy of the letter very soon. Paul also testified that Gosden Construction continued to work on the property for approximately one more month following the owner's receipt of the letter, before the owner "fired" Gosden Construction. There was no testimony that the property owner ever told the Gosdens why he was terminating their employment or refusing to pay the amount the Gosdens were claiming he still owed them. Much later, in defending against the Gosdens' breach of contract action, the owner did refer to defendants' allegations as one of the reasons he terminated his relationship with Gosden Construction; that is not conclusive evidence, however, that the letter proximately caused the owner to breach the contract. Moreover, in light of Paul

Gosden's testimony that Gosden Construction continued to work on the property for another month after the owner received the letter, and the fact that the owner stated in his breach of contract answer that he was dissatisfied with the quality of some of Gosden Construction's work, plaintiffs failed to show that the property owner would not have fired Gosden Construction and refused to pay it if defendants had not sent him the letter.

Neither the element of intent nor the element of causation was established so firmly that a verdict against plaintiffs, even assuming that the other elements were clearly established, was "manifestly contrary to the natural and reasonable inferences to be drawn from the evidence" and so "at odds with substantial justice" as to require reversal. Plaintiffs' eleventh assignment of error is overruled.

## L

Plaintiffs' twelfth assignment of error is that the trial court incorrectly released the jury and vacated its award of punitive damages to plaintiff Ian Gosden against three of the defendants. Inasmuch as the trial court's judgment in favor of those defendants on Ian Gosden's defamation claim must be reversed based upon plaintiffs' other assignments of error, this assignment of error is moot and is overruled on that basis.

## M

Plaintiffs' thirteenth assignment of error is that the trial court incorrectly entered a final judgment that was contrary to the jury verdict. Inasmuch as the trial court's judgment in favor of the three defendants against whom the jury returned a verdict on Ian Gosden's defamation claim must be reversed based upon plaintiffs' other assignments of error, this assignment of error is moot and is overruled on that basis.

## N

Plaintiffs' fourteenth assignment of error is that the trial court incorrectly assessed costs to plaintiffs. Inasmuch as the trial court's judgment against plaintiffs Ian Gosden and Paul Gosden on their defamation and civil conspiracy claims must be reversed, this assignment of error is moot and is overruled on that basis.

## III

The judgment of the trial court against Paul Gosden and Ian Gosden on their defamation and civil conspiracy claims is reversed, and the remainder of the

judgment is affirmed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SLABY, J., concurs.

REECE, P.J., concurs in part and dissents in part.

REECE, Presiding Judge, concurring in part and dissenting in part.

I concur with the overruling of assignments of error two, three, five, six and eleven. I dissent as to assignments of error twelve, thirteen and fourteen and would overrule them for the reasons stated herein as to the remaining assignments. I dissent from the disposition of assignments of error one, four, seven, eight, nine and ten.

As to the first assignment of error, I do not believe that the letter is libel *per se* as a matter of law. At worst, it is ambiguous and, therefore, subject to the trial court's discretion. The determination of whether a publication is defamatory *per se* is solely within the discretion of the trial court. *Becker v. Toulmin* (1956), 165 Ohio St. 549, 60 O.O. 502, 138 N.E.2d 391; *McCartney v. Oblates of St. Francis de Sales* (1992), 80 Ohio App.3d 345, 609 N.E.2d 216. To borrow and paraphrase a well-known statement: Proof of libel in the air, so to speak, will not do. To be actionable, a statement must be "of and concerning" the plaintiff:

"If some question exists as to whether offensive words are of and concerning the plaintiff, the fact dispute is one for the jury; if the words are unambiguous as to the person referred to, the issue may be one of law. Thus, whether a statement is of and concerning the plaintiff is ordinarily a question for the trier of fact." See 50 American Jurisprudence 2d (1995) Libel and Slander, Section 28.

The letter does not unambiguously accuse the Gosdens of the objectionable behavior. It is subject to interpretation and, thus, required proof of who was libeled and how they were damaged. The language would support the trial court's ruling that the letter is not libel *per se*. The trial court submitted the entire issue to the jury, which, I believe, was justifiable.

As to assignment four, the fact is that the jury awarded punitive damages pursuant to the more demanding instructions given. Therefore, it is not error that a lesser standard was not given. It was the court who took away the jury's award of punitive damages and not because of a wrong legal standard in the

instructions but because the jury did not award any compensatory damages following a proper jury instruction.

As to assignment seven, the evidence complained of does not appear to have been prejudicial to the jury, since it awarded punitive damages in spite of the questioned evidence of other lawsuits.

As to the eighth assignment, I have already stated that the letter was not libelous *per se*. Therefore, the court's ruling that Paul Gosden did not prove any injury or damages should stand.

Regarding the ninth assignment, the letter was not libelous *per se*, there would not be a presumption of damages, the defamation claim fails for want of damages and, accordingly, there was no underlying tort to support the civil conspiracy.

As to assignment ten, I believe that because there was a punitive damage award by the jury, the lack of information sought could not have been prejudicial. It was the court who took away the punitive award and not because of any lack of financial information.

I would affirm the judgment below.