This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Thomas Strussion, Donna Strussion Abrams, and Ronald Strussion ("the Strussions"), appeal from the decision of the Summit County Court of Common Pleas, granting summary judgment to appellees, Belmont County, Ohio, Belmont County Commissioners, Michael C. Bianconi, Charles R. Probst, Anita H. Wiley, Belmont County Department of Jobs and Family Services, and Wayne Pielech (collectively referred to hereinafter as the "Belmont County appellees"), as well as the Akron Beacon Journal Publishing Company, Janet Leach, and Jon Craig (collectively referred to as the "Beacon Journal appellees"). We affirm.
 I.
On October 30, 2000, the Strussions filed a complaint alleging, among other claims, defamation, invasion of privacy, and a Section 1983, Title 42, U.S. Code ("Section 1983") claim. In their complaint, the Strussions alleged that, as part of their father's Medicaid application process, private information was provided to the Belmont County Department of Job and Family Services, a department that works with the Board of Commissioners and Belmont County to administer the Medicaid program. They further alleged that the Belmont County appellees caused the confidential information to be released to Mr. Craig, a reporter for the Akron Beacon Journal Publishing Company (the "Beacon Journal"). This release, they alleged, led to an article that was published by the Beacon Journal on November 1, 1998.
In the article at issue, the Beacon Journal reported that the Human Services Chief from Belmont County, Chester Kalis, had been appointed to a job with the state, in spite of the fact that there was a federal investigation into his county department's handling of Medicaid cases. The article covered references used by Mr. Kalis and mentioned details about his new position. The article also mentioned that, at the same time that Mr. Kalis had been appointed to the new position, the Belmont County Sheriff's Department and the FBI were investigating several Medicaid cases in the county, one such case involving the Strussion family. The article, in pertinent part, reported:
 "According to county sources and human services records, one case being investigated involves the transfer of assets to three children of Alphonse Strussion, the 82-year-old grandfather of insurance-industry lobbyist Thomas Strussion [, son of appellant Thomas Strussion, Sr.].
"* * *
 "Documents show the assets in question include $25,323 in bank accounts closed in 1994 and proceeds from a Bellaire home that was transferred to family members in 1993. The home was resold last spring — or within three years of [Alphonse] Strussion's approval for Medicaid in 1995.
 "According to county records, one of the Strussion children provided the county human services department with notes saying some of the assets were used for their mother's funeral.
 "Federal law requires strict control over the distribution of assets to family members when a relative applies for subsidized medical or nursing home care. Sources within Belmont County government said it was widely known that [Alphonse] Strussion had significant assets when he and his late wife, Adeline, were approved for Medicaid.
 "Thomas Strussion Sr., reached at his family flower shop on Friday, said he has not been contacted by any investigators. `I haven't heard anything like that. Not at all. There's a lot of mudslinging down here. It's news to me.'
 "Alphonse Strussion's daughter, Donna Abrams of Reynoldsburg, said she was unaware of the investigation and she has no comment. A third sibling, Ronald, could not be reached for comment last week."
The article also reported information pertaining to Mr. Kalis, including the fact that he was no longer employed with Belmont County and also the fact that people had been aware of the investigation when he was hired for the new position.
With regard to the Strussions' complaint, the Belmont County appellees filed a motion for summary judgment on June 28, 2001. On June 29, 2001, the Beacon Journal appellees also filed a motion for summary judgment. The Strussions filed a brief in opposition to the motions for summary judgment on July 30, 2001. They supplemented the motion in opposition on August 9, August 30, and September 19, 2001. The Belmont County appellees replied in support of their motion for summary judgment on August 15, and September 21, 2001. The Beacon Journal appellees replied in support of their motion for summary judgment on August 15, August 16, and September 21, 2001. On October 2, 2001, the trial court granted the motions for summary judgment. This appeal followed.
 II.
The Strussions assert three assignments of error. We will discuss each in turn. As relevant to the assignments of error, pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v.Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 A. First Assignment of Error "THE TRIAL COURT ERRED IN FINDING THAT THE NOVEMBER 1, 1998 AKRON BEACON JOURNAL ARTICLE WAS NOT DEFAMATION PER SE."
In their first assignment of error, the Strussions assert that the trial court erred when it granted summary judgment on the defamation claims in favor of the Beacon Journal appellees because, upon reviewing the evidence submitted by the parties, there exists a genuine issue of material fact as to whether the statements made in the Beacon Journal article were defamation per se. Further, the Strussions assert that, with regard to this element, a genuine issue of material fact also remains as to whether the Strussions demonstrated that the statements at issue caused them special damages. We disagree
To prevail in a defamation case, a plaintiff who is a private person must prove five elements: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." Gosden v. Louis (1996), 116 Ohio App.3d 195, 206. Written defamation is referred to as libel; spoken defamation is referred to as slander. Id. There are two types of defamation, and, consequently, two types of libel. Id.
"Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo. Written matter is libelous per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." (Citations omitted.) Id. at 206-07.
When not ambiguous, whether a writing is libelous per se is a question of law for the trial court to determine. Id. at 207; see, also, Matalkav. Lagemann (1985), 21 Ohio App.3d 134, 136.
Generally, "[w]here statements are libelous per se, the existence of some damage will be presumed and thus the plaintiff is not required to plead and prove special damages." Jones v. White (Oct. 15, 1997), 9th Dist. No. 18109. "`In an action for libel per quod * * * the plaintiff has the burden to plead and prove special damages.'" (Omission sic.)Stokes v. Meimaris (1996), 111 Ohio App.3d 176, 184, quoting Thomas H.Maloney Sons, Inc. v. E.W. Scripps Co. (1974), 43 Ohio App.2d 105,107-08. Special damages are damages of such a nature that they do not follow as a necessary consequence of the complained injury. Gennari v.Andres-Tucker Funeral Home, Inc. (1986), 21 Ohio St.3d 102, 106. Further, special damages are damages that "`result from conduct of a person other than the defamer or the one defamed[.]'" Bigelow v. Brumley
(1941), 138 Ohio St. 574, 594, quoting 3 Restatement of the Law, Torts 185, Section 575, Comment b.
In this case, the trial court determined that the Strussions had failed to establish the fifth element, holding that, first, the article did not amount to libel per se and, second, that there was no evidence presented to demonstrate that the Strussions suffered special damages.[1] With regard to whether the article was libel per se, the Strussions assert that the article was tantamount to an allegation that they had committed Medicaid fraud, insinuating that the family may have hid assets so that Alphonse Strussion could qualify for Medicaid benefits.
The Beacon Journal article pertained to the appointment of Mr. Kalis to a position in the state government, in spite of the fact that there was a federal investigation into the county department's handling of Medicaid cases during the time that he served as Belmont County's Director of Human Services. On its face, the article reported an investigation into the administration of Medicaid benefits in Belmont County. The statements, as they relate to Thomas Strussion, Donna Strussion Abrams, and Ronald Strussion, do not accuse them of Medicaid Fraud; rather, the article states that one of the children provided the county department with notes indicating that a portion of the assets were used for funeral expenses and, further, that each person, when contacted, did not indicate any knowledge of an investigation into their father's Medicaid approval.
Merely reporting that an investigation was being conducted into the transfer of assets to the parties at issue does not, on its face, make accusations of Medicaid fraud on the part of Thomas Strussion, Donna Strussion Abrams, and Ronald Strussion. The statements at issue require interpretation and innuendo and thus, if libelous at all, are libelous per quod. Moreover, though not raised by the Strussions, there is not an imputation of criminal conduct to Thomas Strussion, Donna Strussion Abrams, or Ronald Strussion. If there is any imputation of criminal conduct, it could only be construed as being directed toward individuals other than the appellants. The appellants were not accused of knowingly participating in any potentially fraudulent application process; rather, they were portrayed as being cooperative with the department by providing information that a portion of the assets were used for funeral expenses and as not having any knowledge of an investigation taking place. Consequently, as there is no genuine issue of material fact, the trial court did not err in finding that the article was libel per quod for which special damages must be shown.
With regard to special damages, the Strussions assert that, by alleging that they had injuries which included pain, suffering, anguish, humiliation, and embarrassment, they have provided sufficient evidence of damages to raise a genuine issue of material fact.
In support of their motion for summary judgment, the Beacon Journal appellees asserted that the Strussions had not established special damages. The moving party pointed to Thomas Strussion's deposition in which he stated that his flower shop business had shown a general decline for the past five years and that, consequently, he could not say to what degree the article had hurt his business. The moving party also pointed to Ronald Strussion's deposition in which he commented that it was hard to measure how he had been damaged by the article.
In response to the summary judgment motion, in support of their assertion that they had suffered special damages, the Strussions pointed to Thomas Strussion's deposition. In the deposition, he stated that business at his shop is not the same as it used to be, referring to the fact that the shop was located in an economically depressed area and also to his belief that the article could not have been helpful to the economic outlook of his store. The Strussions also pointed to Ronald Strussion's deposition in which he stated that the article was personal to him because it involved his family and that anything that affected his family also affected him. Finally, the Strussions pointed to Donna Strussion Abrams' deposition. In her deposition, she stated that she was humiliated because the people she worked with knew her maiden name and knew about the articles. She also expressed concern for her father's welfare.
The Strussion's allegations do not indicate any damage which has been the result of conduct of a third party, a person other than the defamer or the one defamed. See Bigelow, 138 Ohio St. at 594. At most, the allegations indicate that the Strussions were apprehensive that a potential third party could or might alter their relations toward them either as individuals or as business owners. There is no concrete allegation that any third party did in fact alter their relations with the Strussions or that their pain, suffering, anguish, humiliation, and embarrassment were in any way the result of a third party's actions.
Construing the evidence most strongly in favor of the Strussions, there is no genuine issue of material fact regarding the fifth element, requiring either a statement that is defamatory per se or special damages, and the Beacon Journal appellees were entitled to judgment as a matter of law with regard to this claim. Therefore, the trial court properly granted summary judgment on the defamation claim. The Strussions' first assignment of error is overruled.
 B. Second Assignment of Error "THE TRIAL COURT ERRED IN FINDING THAT THE DOCUMENTS TRANSFERRED TO JON CRAIG WERE NOT PROVED TO BE PART OF ALPHONSE STRUSSION'S MEDICAID FILE."
In their second assignment of error, the Strussions assert that the trial court erred in granting summary judgment in favor of the Beacon Journal appellees on the invasion of privacy by publication claim because a genuine issue of material fact remained for trial.[2] We disagree.
To recover for the tort of invasion of privacy by publication of private facts, the following elements must be shown: (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized was not of legitimate concern to the public. Killileav. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 166-67; see, also,Early v. The Toledo Blade (1998), 130 Ohio App.3d 302, 342.
In their motion for summary judgment, the Beacon Journal appellees argued that the Strussions' invasion of privacy claim must fail because the matter publicized, namely the investigation into the administration of Medicaid benefits during the time that Mr. Kalis served as Belmont County's Director of Human Services, was of legitimate concern to the public. In the motion, the Beacon Journal appellees provided factual information and asserted that, upon receiving documents relating to Alphonse Strussion's Medicaid application from an anonymous source, Mr. Craig conducted an investigation and verified the information he was given. The Beacon Journal appellees pointed to an affidavit of Mr. Craig in which he stated that, in addition to the documents that he received, he relied upon other public records and information received from additional sources to verify the accuracy of his story.
In support of their assertion that the investigation was of public concern, the Beacon Journal appellees pointed to Mr. Craig's affidavit and deposition. In these items, Mr. Craig stated that, prior to the article appearing in the Beacon Journal newspaper, an article was published in The Times Leader newspaper addressing the fact that an investigation was being conducted into both the Belmont County Human Services Department and Mr. Kalis' service as the director for the department. Appellees also pointed to a portion of the deposition in which Mr. Craig stated that sources had told him that the FBI and the Belmont County Sheriff's Department were investigating the administration of Medicaid files, including Alphonse Strussion's file.
In their brief in opposition to the Beacon Journal appellees' motion for summary judgment, the Strussions conceded that the matter regarding an alleged Medicaid fraud investigation of the Strussions was of public concern. However, they appeared to argue, in essence, that the portion of the article addressing the transfer of assets was a matter so private to the Strussions that it could not be considered a matter of public concern.[3] Specifically, they asserted that the matter could not be of public concern because the information came from their father's Medicaid file. In support of this assertion, they pointed to Mr. Craig's affidavit in which he stated that he had attached, as exhibits to his affidavit, documents maintained by the Belmont County Department of Jobs and Family Services and that he had used such documents to prepare his story.
After reviewing the evidence, it is apparent that there is no evidence that the investigation into the administration of Medicaid benefits was not a legitimate matter of public concern. The Beacon Journal appellees pointed to Mr. Craig's affidavit and deposition in which he provided information that he had learned with regard to an investigation that was occuring prior to writing the article. While the Strussions argued that a portion of the article was based upon their father's Medicaid file and, consequently, concerned such a private matter that it could not be considered to be of public concern, the Beacon Journal appellees and Mr. Craig, in his affidavit, asserted that, not only did Mr. Craig receive and use the documents that he had attached as exhibits, but also that he was able to verify the story through the use of additional sources and other public records. Construing the evidence most strongly in favor of the Strussions, nothing in the record indicates that the information contained in the article concerning the transfer of assets was not part of the public record and certainly does not support the Strussions' assertion that the matter was so private to them that it could not be considered a matter of public concern.
There being no genuine issue of material fact on the issue of whether the investigation of fraud in the Medicaid administration in Belmont County was a matter of legitimate concern to the public, the Strussions' assigned error is without merit. The second assignment of error is overruled.
 C. Third Assignment of Error "THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFFS FAILED TO DEMONSTRATE THAT THE BELMONT COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES DID NOT MAINTAIN THE STRUSSION MEDICAID FILE IN CONFIDENCE."
In their third assignment of error, the Strussions assert that the trial court erred in granting summary judgment in favor of the Belmont County appellees on the Section 1983 claim because a genuine issue of material fact remained for trial. Specifically, the Strussions assert that there was a genuine issue of material fact as to whether the alleged release of confidential information occurred when the Belmont County appellees were acting under color of state law arising through the custom, practice, and policy of the Belmont County Department of Job and Family Services. We disagree.
"The essence of a claim under Section 1983 is that a claimant has been deprived of a right secured by federal law." Breeding v. Bd. of Trusteesof German Twp. (Nov. 16, 2001), 2nd Dist. No. 18760. To recover under Section 1983, the initial inquiry must focus on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Id., citing to 1946 St. ClairCorp. v. Cleveland (1990), 49 Ohio St.3d 33, 34.
In a Section 1983 action, the phrase "under color of state law" means that the defendant exercised power possessed by virtue of state law and which was made possible only because the defendant was clothed with the authority of state law. Johnson v. Morris (Dec. 13, 1993), 4th Dist. No. 93CA1969. Specifically,
"[a] governmental entity cannot be liable under Section 1983 based solely on the doctrine of respondeat superior. Section 1983 liability may be based on conduct that was expressly authorized by the entity. The entity may also be liable under Section 1983 for the deprivation of a constitutional right when the deprivation arises from a governmental `custom' or `policy.' Additionally, the governmental entity may be liable under Section 1983 for harm caused by a specific unauthorized disclosure if the entity had failed to investigate previous similarly harmful and unauthorized disclosures." (Citations omitted.) Patrolman "X"v. Toledo (1999), 132 Ohio App.3d 374, 398.
In their motion for summary judgment, the Belmont County appellees asserted that they had no personal involvement in the conduct which resulted in the alleged violation, arguing that the theory of respondeat superior alone was insufficient to support the Section 1983 claim. In support of their motion, they pointed to Donna Strussion Abrams' deposition in which she stated that she believed that the Belmont County Commissioners must have been aware of the release of information in her father's file due to their positions of power and the fact that people with such responsibility should be conscious of what happens to the county's Medicaid files.
Also, in support of their motion for summary judgment, the Belmont County appellees pointed to Thomas Strussion's deposition in which he mentioned possible parties that could have been involved and stated that he tried to trace the history of the location of his father's Medicaid file. Mr. Strussion also stated that he had not figured out who released the confidential information but that he had narrowed it down to several people who may have been responsible. He then clarified that he knew that it must have been someone with access to the file but explained that he did not know how many people had access to the Medicaid files. The Belmont County appellees also pointed to the deposition of Ronald Strussion. In such deposition, Ronald Strussion discussed several people whom he believed could have acted in concert to release confidential information pertaining to his family. He explained that he did not know who released the information and that he did not have any proof that any particular person committed a violation.
In response to the summary judgment motion, the Strussions argued that, in spite of the fact that the Belmont County Department of Job and Family Services is required to safeguard the confidentiality of Medicaid files, a custom and practice was adopted that allowed the files to be left in unsecured locations. In support of this allegation, the Strussions asserted that two named employees were not provided with secure storage areas for the Medicaid files that they were using. The Strussions also suggested a way in which the confidentiality of the files could be improved. In opposing the motion for summary judgment, the Strussions did not point to any portions of the record in support of their allegations but, rather, generally stated that the Belmont County Department of Job and Family Services adopted policies that did not ensure confidentiality.
Construing the evidence most strongly in favor of the appellants, we conclude that a reasonable jury could not find that a custom, practice, or policy of the Belmont County appellees led to a deprivation of a federal right. There being no genuine issue of material fact that the conduct complained of was committed by the Belmont County appellees acting under color of state law, the trial court properly granted summary judgment on the Section 1983 claim. The Strussions' third assignment of error is overruled.
 III.
The Strussions' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, P.J. CONCURS.
[1] The Strussions have not assigned as error the trial court's determination that any defamation claims brought against Mr. Craig individually were untimely.
[2] The Strussions do not assign as error the trial court's decision to grant summary judgment in favor of the Belmont County appellees with regard to the invasion of privacy claims. It appears that, in the present appeal, the Strussions may be asserting a statutory claim, pursuant to R.C. 5101.27, against the Belmont County appellees for an alleged release of information. The Strussions' complaint was silent as to any allegations of statutory violations and no amended complaint was filed. Further, the Strussions first raised the statutory issue in their brief in opposition to the motion for summary judgment; thereafter, the appellees did not respond to the possible allegation of a statutory violation and the matter was not addressed by the trial court. Any argument that may be raised in this assignment of error regarding this issue is not properly before this court. See, generally, Poinar v.Richfield Twp. (Aug. 22, 2001), 9th Dist. Nos. 20383 20384.
[3] With regard to their assertion that the portion of the article addressing the transfer of assets was a matter so private that it could not be of public concern, the Strussions specifically excluded the issue of the house transfer and, thus, implicitly left only the issue of the amount of money in the bank accounts.