NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0820n.06

Nos. 13-3821/3853

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **LAWYERS TITLE COMPANY, LLC,** | ) | |
| | ) | **FILED**<br>Oct 29, 2014<br>DEBORAH S. HUNT, Clerk |
| **Plaintiff-Appellant/Cross-Appellee (13-3821 & 13-3853),** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **KINGDOM TITLE SOLUTIONS, INC.,** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| **Defendant-Appellee (13-3821),** | ) | **NORTHERN DISTRICT OF** |
| **Defendant (13-3853),** | ) | **OHIO** |
| **and** | ) | |
| | ) | |
| **SARAH BITTINGER,** | ) | |
| | ) | |
| **Defendant-Appellee/Cross-Appellant (13-3821 & 13-3853).** | ) | |

**BEFORE:** BOGGS, BATCHELDER, and WHITE, Circuit Judges

**ALICE M. BATCHELDER, Circuit Judge.** Appellant Lawyers Title Company, LLC ("Lawyers") appeals the district court's award of partial summary judgment and judgment as a matter of law to Appellee Sarah Bittinger and summary judgment to Appellee Kingdom Title Solutions, Inc. ("Kingdom"), on claims related to the decline in revenue of Lawyers's Medina, Ohio office. Bittinger cross-appeals, arguing that the amount of the jury's damages award on Lawyers's surviving claims is excessive. We affirm the district court's grant of partial summary judgment and judgment as a matter of law to Bittinger, its grant of summary judgment to

1

Kingdom, and its denial of Bittinger's renewed motion for judgment as a matter of law seeking a reduction in damages.

## I.

Lawyers provides title insurance and escrow services for real estate transactions. Sarah Bittinger was Lawyers's Medina, Ohio, office manager, and Debbie Frattaroli was the office's escrow officer. Neither employee's employment agreement contained a non-compete provision. The district court found that

> title insurance services are substantially similar across the industry. Like attorneys, title insurance salespeople often have a client base who will follow them from employer to employer. Customers look for service and service is more directly associated with employees rather than with title insurance underwriters.

Accordingly, Lawyers refers to Bittinger and Frattaroli as "revenue-attached employees."

Lawyers's competitor—Kingdom—decided to make inroads into the insurance and escrow services business in Medina. To that end, Kingdom began recruiting Bittinger to run Kingdom's new Medina office. In April 2012, while Bittinger was still employed by Lawyers, Kingdom's president Brian Moore offered Bittinger a job as a sales representative. Bittinger suggested that Moore consider hiring Frattaroli too, explaining that Frattaroli was the "great escrow officer" Kingdom needed. Moore suggested that Bittinger could offer employment to Frattaroli.

When Bittinger told Frattaroli that she was considering leaving Lawyers for Kingdom, Frattaroli was upset, ostensibly because a significant amount of business would leave with Bittinger. Frattaroli refused to leave Lawyers, so Bittinger told Moore that she was not yet ready to "abandon ship."

Bittinger and Moore met again in May 2012; during that meeting Moore outlined the details of the job offer and officially offered a job to Bittinger. Bittinger reiterated that she wanted Frattaroli to come with her to Kingdom, and Moore told Bittinger that she could offer Frattaroli a position. Frattaroli again declined the position. Although the record is unclear on this point, it appears that Bittinger also declined the position after Frattaroli's refusal.

Moore soon offered Bittinger an even more lucrative opportunity, which included an equity stake in Kingdom's Medina office. He reiterated that Bittinger could offer a job to Frattaroli. Sometime during June 5–7 and before Bittinger accepted Kingdom's offer, Bittinger offered Frattaroli a job with an even higher salary, and this time Frattaroli "accepted right there on the spot." On June 7, 2012, Bittinger signed an operating agreement with Kingdom.

Bittinger and Frattaroli continued their employment with Lawyers through June 22, 2012. When viewed in the light most favorable to Lawyers, the record reveals that during her period of dual employment, Bittinger transferred a number of purchase agreements from Lawyers to Kingdom, told several repeat customers of her impending departure, and deleted certain emails and contacts from her Lawyers computer prior to leaving.

The district court granted Kingdom's motion for summary judgment on all of Lawyers's claims. The district court also granted Bittinger's motion for summary judgment except on Lawyers's claim for tortious interference with business relations, and breach of her duties for "disloyal acts between June 6, 2012 and June 22, 2012 and any damages proximately caused by those acts." These claims proceeded to trial.

At trial, the district court sustained an objection to testimony Lawyers elicited about Lawyers's lost profits between September and December 2012. The district court reasoned that such testimony was "outside the timeline for these loans, and beyond that I think it is just

testimony about damages he believes may have flowed from the fact that she exercised the, the right she had to leave the office, because she had gone." The court, however, did permit Lawyers to submit a written offer of proof with respect to these damages.

The district court sua sponte deleted a punitive-damages jury instruction, stating: "I don't think there is sufficient evidence to support giving it to the jury, so I intentionally deleted the punitives. I don't think there is a sufficient showing of malice to support the request for a punitive damage instruction." Lawyers objected.

The jury found Bittinger liable and awarded Lawyers $13,028.00. It also found in favor of Frattaroli.

After the verdict, Bittinger renewed her motion for judgment as a matter of law, arguing that that the jury's verdict should be capped at the value of the six contracts with which the jury could have found she interfered ($3,263.00), and that the additional damage award was without evidentiary support. The court denied Bittinger's motion, stating that although "the evidence supporting a higher award is significantly more vague," "[t]he jury could have concluded that some portion of those lost profits was attributable to other tortious conduct by Bittinger, such as warehousing of orders or comments she made encouraging customers not to do business with Lawyers while she was still employed there."

Lawyers appeals the adverse summary judgment rulings, and Bittinger cross-appeals the district court's denial of her renewed motion for judgment as a matter of law. Lawyers does not appeal the judgment as it applies to Frattaroli.

## II.

We review de novo a district court's summary judgment order. *See Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 (6th Cir. 2006); *see also Schultz v. Newsweek,*

*Inc.*, 668 F.2d 911, 917 (6th Cir. 1982) ("Summary judgment practice in federal district courts is controlled by Rule 56, unaffected by state procedural rules."). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

When sitting in diversity, we apply the forum state's standard of review "when a Rule 50 challenge is mounted to the sufficiency of the evidence supporting a jury's findings." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). Thus, we review de novo the district court's denial of Bittinger's renewed motion for judgment as a matter of law. *See Reeves v. Healy*, 950 N.E.2d 605, 615 (Ohio 2011) ("Because a directed verdict tests only the sufficiency of the evidence, it presents a question of law that appellate courts review de novo.").

## A.

The district court did not err by limiting the timeframe for which the jury was permitted to consider Bittinger's breach of fiduciary duty and duty of loyalty claims. The district court allowed the jury only to hear evidence that Bittinger's actions from June 6, 2012—the date she signed the operating agreement with Kingdom—through June 22, 2012—the date her employment with Lawyers concluded—breached her duties and proximately damaged lawyers.

Under Ohio law, "A breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom." *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d

287, 310 (S.D. Ohio 2007); *see also Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988). Assuming the existence of such duties,[1] Bittinger arguably breached them before June 6, 2012 by repeatedly offering Frattaroli a job on behalf of a competitor, although at this time Bittinger herself had no employment relationship with Kingdom. Lawyers uses what it calls an "excluded causation theory" in an attempt to explain how damages proximately resulted from Bittinger's pre-June 6 conduct. Lawyers posits that Frattaroli would not have left Lawyers but for Bittinger's improper solicitation, and Bittinger herself would not have left had Frattaroli not joined her. Absent Bittinger's breach, therefore, the revenue-attached employees Bittinger and Frattaroli would have stayed at Lawyers, and their customers would have stayed too. Lawyers argues that the decline in Lawyers's revenue in the months following Bittinger's and Frattaroli's departure is damages attributable to this breach.

We agree with the district court that Lawyers cannot, as a matter of law, show that Bittinger's breach proximately caused its losses. Lawyers did not include a non-compete provision in Bittinger's employment agreement, and Bittinger was therefore free to leave Lawyers and solicit her former customers at any time. Lawyers cannot show that these customers left because Bittinger breached her duties when an equally plausible inference is that these customers left because Bittinger solicited them after she left Lawyers. Bittinger's resignation from Lawyers on June 22 broke the chain of causation; customers did not begin leaving Lawyers until after Bittinger left Lawyers, when Bittinger was entitled to solicit them. Because Bittinger was a revenue-attached employee, the customers likely would have left anyway. Lawyers's chain of causation is too attenuated and speculative to withstand summary judgment.

---

[1]We, like the district court, decline to decide whether a fiduciary relationship existed in this case.

Lawyers argues that we adopted the functional equivalent of its "excluded causation theory" in *Chicago Title Insurance Corp. v. Magnuson*, 487 F.3d 985 (6th Cir. 2007), where we affirmed a jury verdict against former Chicago Title executive James Magnuson who breached a non-compete provision by working for a competitor after leaving Chicago Title. Although Magnuson's employment agreement contained a non-compete provision, Lawyers questions the relevance of this distinction because even Bittinger was forbidden from competing with Lawyers *during* her employment and the solicitation of Frattaroli occurred while Bittinger was employed by Lawyers.

In *Chicago Title*, damages were proximately caused by Magnuson's breach of his non-compete agreement because Magnuson solicited his former co-workers while under the non-compete *and* customers left while Magnuson was under the non-compete. In this case, however, the damages are attenuated and speculative—Bittinger solicited Frattaroli while still employed by, and therefore not free to compete with, Lawyers, but the customers who eventually left Lawyers did so *after* Bittinger was no longer employed by, and therefore was free to compete against, Lawyers. The district court permitted the jury to assess proximate causation and damages for breach of Bittinger's duties while Bittinger was employed by Lawyers; *Chicago Title* requires nothing more.

Similarly, *Security Title Agency, Inc. v. Pope*, 200 P.3d 977 (Ariz. Ct. App. 2008), is distinguishable because the seventy-percent loss in Security Title's revenue was traceable to actions taken by a branch manager and her associates during their employment with Security Title; customers were contacted, files were copied and taken home, and commitments were received from repeat customers that they would leave Security Title. *Id.* at 986–87. Lawyers asks that we extend *Security Title* by attributing the success of Bittinger's proper post-

employment competition to Bittinger's improper solicitation of Frattaroli, which occurred months before they left Lawyers. This we cannot do.

Had Lawyers included a post-employment non-compete provision in Bittinger's employment agreement this would be a different case. But it did not, and Lawyers has failed as a matter of law to show that its damages proximately resulted from Bittinger's breach of her duties. The district court did not err by limiting the jury's consideration of Bittinger's breach of her duties to conduct that occurred while Bittinger was working for Lawyers and Kingdom simultaneously.

**B.**

The district court did not err by granting Bittinger summary judgment on Lawyers's tortious-interference-with-contract claims. Lawyers appeals the summary judgment order only as to two of the contracts—the Avon Lake Road transaction and the State Route 43 transaction.[2] Lawyers claims that Bittinger opened these transactions at Lawyers and then transferred them to Kingdom for closing.

A claim for tortious interference with contract must show: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). It is not necessary to decide whether residential real estate purchase agreements are the type of contract that can give rise to a tortious-interference-with-contract claim because Lawyers is neither a

---

[2]Lawyers also complains that the district court improperly ordered summary judgment as to those two contracts sua sponte. Although Bittinger's memorandum in support of her motion for summary judgment conceded that "factual disputes *may* exist," making "summary judgment on liability for them *unlikely*," Bittinger argued elsewhere in that memorandum that "[s]ummary judgment should therefore be granted in Defendants' favor as to all Plaintiff's tortious interference claims." At the very least, Lawyers was given sufficient advance notice of Bittinger's claims to make sua sponte summary judgment proper. *See Celotex Corp.*, 477 U.S. at 326.

party to these agreements nor a third-party beneficiary with contract rights. *See Westwinds Dev. Corp. v. Outcalt*, No. 2008-G-2863, 2009 WL 1741978, at *3 (Ohio Ct. App. June 19, 2009) ("In Ohio, only a party to a contract or an intended third-party beneficiary may bring an action on a contract.").

The semi-legible purchase agreements in the record are signed by both buyer and seller. Lawyers is designated as the escrow agent in the State Route 43 purchase agreement, and Lawyers is designated as the title insurance provider in the Avon Lake Road purchase agreement and accompanying documents. Neither of these agreements has been signed or agreed to by Lawyers. There is no indication from the record that Lawyers even knew that it had been designated in these agreements.

In Ohio "it is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law." *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989). Although the lack of a traditional offer and acceptance paradigm means that Lawyers was not a party to an express contract, "[i]n contract[s] implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Id.* Yet even implied-in-fact contracts must have all the elements of an express contract. *Id.* These include "an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 31 (Ohio 2004). In implied-in-fact contracts, "a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended." *Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997) (citation omitted).

Mark Leszczynski, Lawyers's Indiana and Ohio manager, testified that "[g]enerally, orders for such services are placed by transmitting a real estate sales contract to Lawyers. Once transmitted to Lawyers, these agreements constitute valid contracts for title and escrow services." Leszczynski Decl. ¶¶ 7–8. Lawyers also argues that Bittinger "conflates a contract to purchase title insurance with the title insurance policy itself, which is also a contract. The contracts at issue in this case, are contracts to purchase title insurance and escrow services . . . ." Reply Br. 15. Leszczynski's testimony provided only legal conclusions about the nature of these agreements, which is the only testimony Lawyers provides related to their legal status. Lawyers has the burden of demonstrating the existence of a contract to which it has rights of enforcement. Nowhere has Lawyers alleged—let alone provided facts to support—the necessary formalities, including acceptance, consideration, and mutual assent. The facts presented may invite recovery on a quasi-contract claim, but Lawyers has not pleaded such a claim. Lawyers is not a party to an express contract.

Nor is Lawyers a third-party beneficiary. Only intended beneficiaries have enforceable contract rights in Ohio. In *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980), we cited with approval a district court's distinction between intended and incidental beneficiaries: "[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract was insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *See also Westwinds Dev. Corp.*, 2009 WL 1741978, at *3 ("For a third-party beneficiary to be an intended beneficiary, the contract must have been entered into by the parties *directly or primarily* for the benefit of that person."). In this case, the purchase agreements were not entered into by the

buyer and seller directly for the benefit of Lawyers even if Lawyers would have received some ancillary benefit.

Thus, Lawyers cannot maintain a claim for tortious interference with contract because it was neither a party to these agreements nor a third-party beneficiary.[3] The district court did not err by granting Bittinger summary judgment on these claims. *See generally Phillips v. Dayton Power & Light Co.*, 637 N.E.2d 963, 965 (Ohio Ct. App. 1994) ("Since the reviewing court must independently determine, as a matter of law, whether summary judgment was properly rendered based upon the record made up in the trial court, it is legally immaterial whether the trial court has provided a sound analysis . . . .").

## C.

The district court refused to instruct the jury as to punitive damages for Bittinger's conduct because it held there was an insufficient showing of malice to support the instruction.[4] The district court's ruling after the close of the evidence effectively granted judgment as a matter of law as to punitive damages. *See* Fed. R. Civ. P. 50(a)(1). Because we are sitting in diversity, we use Ohio's standard for judgment as a matter of law. *See Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 408 (6th Cir. 2005). Under Ohio law, the evidence must be "construed most strongly in favor of the non-movant." *Sanek v. Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989). "Such a motion will be granted only if, after considering the evidence in this light, there can be but one reasonable conclusion as to the proper verdict." *Ware v. Veterans Sec. Patrol Co.*, No. 1:06-CV-555, 2008 WL 1990437, at *1 (S.D. Ohio May 1, 2008).

---

[3]It is irrelevant that the district court granted summary judgment while discovery was ongoing. None of the purchase agreements discovered or discoverable provides Lawyers enforceable contract rights.

[4]We have held that it is "clearly within the court's power" to render judgment sua sponte on the issue of punitive damages. *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 546 (6th Cir. 2000) (internal quotation marks omitted).

Ohio predicates punitive damages on "actions or omissions" that "demonstrate malice." Ohio Rev. Code § 2315.21(C)(1). The plaintiff has the burden of proving "malice" "by clear and convincing evidence." *Id.* § 2315.21(D)(4). "Malice" means either "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*, 770 N.E.2d 1068, 1084 (Ohio Ct. App. 2001) (internal quotation marks omitted).

Relaying an offer of employment that proximately causes no damages is not a malicious act. And although the warehousing of transactions demonstrates disloyalty, not every instance of economic competition is marked by actual malice. Bittinger may have disregarded Lawyers's rights vis-à-vis the warehoused purchase agreements, but this did not have "a great probability of causing substantial harm." *See Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987) ("[B]efore submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm."); *Blust v. Lamar Adver. Co.*, 813 N.E.2d 902, 913 (Ohio Ct. App. 2004) ("The crucial issue on appeal is whether Kramer knew that this loss of the trees had a great probability of resulting in substantial harm to the Blusts, or more specifically, whether reasonable minds could differ on this issue."). These transactions were worth approximately $3,263.00 to Lawyers, a pittance even to the Medina office of one of the largest title insurance and escrow services firms in the country. Because the employee contracts here are at-will and by Lawyers's own admission Bittinger was a revenue-attached employee whose customers expressed a desire to continue working with her personally, the customers likely would have followed Bittinger to Kingdom anyway. Bittinger did delete emails and her personal

e-desk contacts. But some of this conduct was arguably authorized by Lawyers's own policy manual, and in any event resulted in minimal—if any—damages. Lawyers has not demonstrated by clear and convincing evidence that Bittinger's conduct demonstrated actual malice, and thus the district court did not err by refusing to instruct the jury on punitive damages.

**D.**

Following the adverse jury verdict, Bittinger renewed her motion for judgment as a matter of law, arguing that a jury verdict in excess of the value of the transactions she transferred to Kingdom ($3,263.00) is without evidentiary support. The jury awarded Lawyers $13,028.00 for Bittinger's breach of her duties during her period of dual employment and for Bittinger's tortious interference with business relations. The district court did not err by denying Bittinger's motion because there was sufficient evidence to sustain the jury's award.

Bittinger concedes that "Lawyers Title's loss of business could have resulted from several things, among them, Bittinger's alleged wrongful acts during the time period, or Bittinger's labor and diligence following her employment with Lawyers when she was entitled to freely compete." Bittinger admits that reasonable minds could disagree on whether her conduct caused a decline in revenue, and thus the jury chose one plausible explanation for some of this decline. Some evidence exists that while she was still employed with Lawyers, Bittinger informed several of Lawyers's repeat customers that she was going to work for Kingdom. According to Lawyers, Kingdom's Open/Closed Order Report indicates "that there were approximately twenty transactions generated by Lawyers Title customers that opened at Kingdom between June 14 and June 28, 2012." Three of the customers whom Bittinger told she was leaving opened orders with Kingdom between June 8 and June 14, 2012—the timeframe for which the jury was permitted to assess damages. The jury also could have concluded that

Bittinger spoke with additional customers within that period, as the jury had evidence before it that other customers of Lawyers opened first-time orders with Kingdom during Bittinger's dual employment. Thus, evidence of other damages beyond the lost profits on the purchase agreements existed, and the jury was free to rely on that evidence in calculating damages. Bittinger has not "overcome the substantial deference owed a jury verdict." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).

### III.

At trial, the district court prevented Mark Leszczynski, Lawyers's Indiana and Ohio manager, from testifying as to Lawyers's lost profits for September through December 2012. Leszczynski was permitted to testify that Lawyers's lost profits for June through August 2012 were $34,877.00. Lawyers argues that "the district court erred in finding that the Excluded Causation Theory was not legally cognizable," and thus the conclusions of law underpinning the district court's evidentiary ruling render the evidentiary exclusion an abuse of discretion. Pl.'s Br. 71.

"We review the district court's admission or exclusion of evidence for an abuse of discretion." *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006). But,

> [a]t the same time, [i]n reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions. These standards are not in fact inconsistent, because it is an abuse of discretion to make errors of law or clear errors of factual determination.

*United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006) (internal quotation marks and citations omitted).

Lawyers's three-sentence argument on this claim is predicated on the success of its "excluded causation theory." Because we have already rejected this theory of proximate cause

14

and damages, however, we find no error in the legal conclusions underpinning the district court's evidentiary ruling. Lawyers provides no other reason why the district court's evidentiary ruling was an abuse of discretion.

## IV.

The district court granted summary judgment to co-defendant Kingdom on Lawyers's claims for civil conspiracy, tortious interference with business relations, tortious interference with contract, and unjust enrichment. We affirm on all claims.

## A.

The district court did not err by granting summary judgment to Kingdom on Lawyers's claim for civil conspiracy. Ohio law defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (citations omitted). The "combination" can be tacit provided the parties have "a common understanding or design." *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996). The "combination" must be "malicious," meaning "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Id.* To state a claim for civil conspiracy, Lawyers must also prove actual damages: "The element of 'resulting in actual damages' means that, if a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action." *Gosden*, 687 N.E.2d at 497. The damages must "proximately result" from "acts committed pursuant to a formed conspiracy." *Minarik v. Nagy*, 193 N.E.2d 280, 281 (Ohio Ct. App. 1963) (quoting 10 Ohio Jur. 2d § 3, "Conspiracy").

Even if Kingdom and Bittinger poached Frattaroli pursuant to a common design, Lawyers cannot show proximately resultant damages. We have already rejected its attempt to do so through its "excluded causation theory." The jury did find that Bittinger breached her duties and tortiously interfered with Lawyers's business relations during her dual employment, but Lawyers has presented no evidence that these actions were "directly attributable" to the conspiracy. *See Minarik*, 193 N.E.2d at 281. And these torts were not a foreseeable result of soliciting Frattaroli. *See Hoffman v. Johnston*, 36 N.E.2d 184, 189 (Ohio Ct. App. 1941) ("The gist of the action is the damage and not the conspiracy, and the damage must appear to have been the natural and proximate consequence of the defendant's act."). Summary judgment is appropriate.

**B.**

The district court did not err by granting summary judgment to Kingdom on Lawyers's claim for tortious interference with business relations. The district court realized that "Lawyers's claims for much of the following, including its tortious interference with business relations claim against Kingdom, hangs [sic] on a finding of civil conspiracy." Kingdom is not liable as a co-conspirator for the reasons outlined in Section IV.A, *supra*. Even if Kingdom knew that the purchase agreements had been transferred by Bittinger improperly (for which there is no evidence), this knowledge does not show that Kingdom acted maliciously. *See Gosden*, 687 N.E.2d at 496. Malice requires more than "knowledge," and "[w]hile a jury might be able to infer from Bittinger's actions that she intended to commit wrongful acts by diverting orders from her current employer, the evidence does not show that either Kingdom or Frattaroli *intentionally* committed any wrongful act." Lawyers has not argued that Kingdom itself tortiously interfered with Lawyers's business relations, and because Lawyers had no enforceable contracts rights with regard to the transferred purchase agreements, Kingdom is not directly liable.

16

**C.**

The district court did not err by granting summary judgment to Kingdom on Lawyers's claim for tortious interference with contract. If Lawyers had no enforceable contract rights arising from the purchase agreements—and we have held that it did not—then Kingdom cannot be liable to Lawyers as a co-conspirator for tortiously interfering with those rights. *See Gosden*, 687 N.E.2d at 497 ("The element of 'resulting in actual damages' means that, if a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action.").

**D.**

The district court did not err by granting summary judgment to Kingdom on Lawyers's claim for unjust enrichment. It held that Lawyers's "excluded causation theory" is "too attenuated to withstand summary judgment." "Unjust enrichment of a person occurs when he or she has and retains money or benefits which in justice and equity belong to another." *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 772 N.E.2d 105, 117 (Ohio 2002) (internal quotation marks omitted).

Lawyers argued below that Kingdom was unjustly enriched by "Bittinger's breach of fiduciary duty and tortious interference with business relations." Lawyers admits that its claim is premised exclusively on the "excluded causation theory," which we have explained is but a clever attempt to avoid showing proximately caused damages. Lawyers has never made the perhaps more reasonable claim that Kingdom was unjustly enriched by retaining the profits on the transactions that Bittinger forwarded to Kingdom during her period of dual employment. Summary judgment on this claim is thus appropriate as well.

17

**V.**

For the foregoing reasons, we AFFIRM the district court's orders granting partial summary judgment and judgment as a matter of law to Bittinger, and summary judgment to Kingdom, and AFFIRM the denial of Bittinger's renewed motion for judgment as a matter of law as to the jury's damages award.

**HELENE N. WHITE, Circuit Judge** (concurring).  I do not agree that the district court properly granted summary judgment dismissing Lawyers Title's interference-with-contractual-relations claim regarding the Avon Road and State Route 43 properties.  The testimony established a genuine issue whether the parties had contracted for Lawyers Title's services.  I conclude, however, that the error does not warrant reversal because it had no effect on the jury's ability to award damages for the conduct underlying the dismissed claim in light of the court's instructions on the claims that did go to the jury.  The instructions actually given to the jury allowed for a verdict in favor of Lawyers Title with respect to these contracts to the same extent an instruction on the dismissed claim would have.