NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0356n.06

No. 19-4082

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 16, 2020
DEBORAH S. HUNT, Clerk

LANCE BROWNING, Individually and On Behalf of All Others Similarly Situated,

    Plaintiff-Appellant,

v.

OHIO NATIONAL LIFE INSURANCE COMPANY; OHIO NATIONAL LIFE ASSURANCE CORPORATION; OHIO NATIONAL EQUITIES, INC.; OHIO NATIONAL FINANCIAL SERVICES, INC.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES COURT FOR THE SOUTHERN DISTRICT OF OHIO

---

**Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.**

JULIA SMITH GIBBONS, Circuit Judge. Lance Browning asks us to reverse the district court's decision dismissing his breach of contract and unjust enrichment claims against Ohio National Life Insurance Company, Ohio National Life Assurance Company, and Ohio National Equities, Inc. (collectively, "Ohio National") for lack of standing and failure to state a claim. Browning insists that, because he was essential to the purposes of Ohio National's contract with his employer, LPL Financial, LLC ("LPL"), he was an intended third-party beneficiary and therefore has standing to sue for breach of contract under Ohio law. Browning also argues that, even if he lacks standing to sue Ohio National for breach of contract, he should have been permitted to advance an unjust enrichment claim. Our precedent requires us to affirm the district court's judgment.

I.

Ohio National is an Ohio insurance corporation that offers, among other products, guaranteed minimum income benefit annuities. Ohio National contracts with broker-dealers like LPL, which employs licensed securities representatives ("representatives") to "solicit sales" of its annuities. DE 11-2, Selling Agreement, Page ID 298. Section 8 of the Selling Agreement provides that all payments received by LPL "are the property of [Ohio National] and shall be transmitted to [Ohio National] . . . immediately." *Id.* at 299. Section 9 provides Ohio National pays LPL based on a "Commission Schedule." *Id.* The Commission Schedule includes "Trail Commissions," for which LPL receives payment "equal to .50% of the total qualified cash values (monthly average) on" the annuities. DE 11-2, Commission Schedule, Page ID 310. Compensation to LPL's representatives is "governed by agreement between [LPL] and its Representatives and its payment will be [LPL]'s responsibility." DE 11-2, Selling Agreement, Page ID 299. The terms of compensation survive the agreement "unless the Agreement is terminated for cause by [Ohio National]." *Id.*

Lance Browning, of Whitehouse, Texas, has been a licensed securities representative for LPL since 2012. Browning was previously a licensed securities representative for other broker-dealers that sold Ohio National's annuities. He "has sold over 100 Annuities that have currently not been surrendered, annuitized, or under a death claim. The trailing commissions he has received as a result of those annuities has been a significant part of his business, having earned and received approximately $89,000 in trailing commissions per year for many years." DE 11, Am. Compl., Page ID 286–87.

On September 28, 2018, Ohio National sent a letter to broker-dealers with which it had a Selling Agreement informing them that it planned to cancel the Selling Agreement on December

12, 2018. Ohio National also declared that it would no longer pay trailing commissions. Browning has not received a trailing commission since December 12, 2018, even though "he continues to provide advice and recommendations to his customers who own Annuities." *Id.* at 287.

In January 2019, Browning filed an amended complaint seeking damages on behalf of himself and other LPL representatives from Ohio National under a number of theories, including breach of contract and unjust enrichment. Ohio National moved to dismiss the suit for lack of standing and failure to state a claim. A magistrate judge recommended that motion be denied. Ohio National filed objections to that recommendation. The district court declined to adopt the magistrate judge's recommendations and instead dismissed Browning's suit. Browning timely appealed.

II.

Our court recently addressed the same claim brought by an employee of a different broker-dealer who entered into the same agreement with Ohio National as did LPL here. *Cook v. Ohio Nat'l Life Ins. Co.*, ___ F.3d ___, No. 19-3984, 2020 WL 3056228 (6th Cir. June 9, 2020). Indeed, the district court order under review in *Cook* is virtually identical to the one we review here. *Compare Cook v. Ohio Nat'l Life Ins. Co.*, No. 1:19-cv-195, 2019 WL 4885500 (S.D. Ohio Oct. 3, 2019), *with Browning v. Ohio Nat'l Life Ins. Co.*, No. 1:18-cv-763, 2019 WL 4885205 (S.D. Ohio Oct. 3, 2019). Our court's decision in *Cook* dictates the outcome of Browning's appeal.

First, Browning argues that the Selling Agreement evinces an intent for him to benefit from the agreement and therefore the district court erred in concluding that he lacked standing to bring suit against Ohio National as a third-party beneficiary. The Ohio Supreme Court has held that a party is a third-party beneficiary only where "the contract was intended to *directly* benefit that third party." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011) (emphasis added). And,

recognizing that development in Ohio law, we have explained that "[t]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Lawyers Title Co., LLC v. Kingdom Title Sols., Inc.*, 592 F. App'x 345, 352 (6th Cir. 2014) (quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)). "Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff*, 957 N.E.2d at 7.

*Cook* concluded, and we agree, that nothing in the Selling Agreement evinces an intent for employees of the broker-dealers to directly benefit. 2020 WL 3056228, at *4–6. Among other provisions, *Cook* highlighted § 9, which provides that broker-dealers—not their employees—receive commissions from Ohio National, gives Ohio National the right to "offset future compensation payable to [the broker-dealer] against any compensation to be returned to [Ohio National]," and explains that "[c]ompensation to [the broker-dealer's] Representatives for Contracts solicited by the Representatives and issued by [Ohio National] will be governed by agreement between [the broker-dealer] and its Representatives." *Id.* at *5. These provisions "cut[] against any suggestion that the Selling Agreement was intended to directly benefit representatives like [Browning]." *Id.*

Browning points to the Schedule of Commissions, which allowed representatives to select a trail commission payment plan. But *Cook* accounted for that provision as well, recognizing that it "was not a commitment to remit each trail commission payment in full to the representatives" because "[LPL] could have elected on the same form to make the trail commission plan selection itself instead." *Id.* The Selling Agreement does not evince an intent for employees like Browning

to benefit directly.  Accordingly, Browning cannot claim third-party standing status and lacks standing to sue Ohio National for breach of contract.

Second, Browning argues that the district court erred in dismissing his unjust enrichment claim.  *Cook* also settles this claim.  "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Lehmkuhl v. ECR Corp.*, No. 06 CA 039, 2008 WL 5104747, at *5 (Ohio Ct. App. Dec. 2, 2008)).  As *Cook* recognized, the Selling Agreement "expressly covers the same subject giving rise to plaintiff's unjust enrichment claim—the payment of commissions by Ohio National on previously sold variable annuity contracts" and thus precludes Browning's unjust enrichment claim.  2020 WL 3056228, at *7.

## III.

Browning lacks standing to sue Ohio National for breach of contract because the Selling Agreement does not evince an intent for him to directly benefit from Ohio National's agreement with LPL.  And because the Selling Agreement covers the same subject as Browning's unjust enrichment claim, Ohio law does not permit Browning to sue Ohio National for unjust enrichment.  Accordingly, the judgment of the district court is affirmed.